[No. F039423. Fifth Dist. Apr. 14, 2003.]

LORI MILLS et al., Plaintiffs and Appellants, v.
FORESTEX COMPANY et al., Defendants and Respondents.

632

COUNSEL

Kroloff, Belcher, Smart, Perry & Christopherson and Ron A. Northup for Plaintiffs and Appellants.

Steven H. Gurnee & Associates, Gurnee, Wolden & Daniels, Steven H. Gurnee, David M. Daniels, Curtis W. Cable and Kirk J. Wolden for Defendants and Respondents Forestex Company.

Caulfield, Davies & Donahue, Bruce E. Leonard and Michael C. Mah for Defendants and Respondents Mike Wunder and Wunder Wood Construction.

OPINION

**BUCKLEY, J.**—In 1990, Lori and Robert Mills (the Mills) hired Mike Wunder, doing business as Wunder Wood Construction (collectively Wunder), to build them a house in Jamestown in Tuolumne County. They hired him again the following year to build a garage, which would be connected to the house by a deck. The hardboard siding Wunder installed on both the house and the garage had been manufactured by the Stimson Lumber Company, doing business as Forestex Company (collectively Forestex).

Within a year or so after the buildings were completed, the siding started to warp and buckle. Despite Wunder's early efforts to correct the problem, it grew progressively worse. By 1993 the paint on the siding had begun to peel, and nails started backing out the year after that. The Mills finally contacted Forestex in 1996. Forestex inspected the house and told them the siding had been installed improperly.

The Mills initiated the present action in 2000 by filing a complaint for damages against Wunder and Forestex alleging violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), breach of express warranty, breach of implied warranty, and strict products liability. Eventually, both Wunder and Forestex moved for summary judgment on the ground the applicable statutes of limitation had run on all the causes of action. The trial court granted their motions, and this appeal followed. We will affirm the judgments.

## FACTS AND PROCEEDINGS

### *The Mills's Complaint*

The Mills filed their initial, unverified complaint on September 15, 2000. Starting with the complaint, and continuing on through their appellate briefs, the Mills's pleadings generally have failed to designate the particular legal theories or statutory bases for their claims, and to specify the party or parties against whom the claims are made: Wunder or Forestex, or both. Moreover, the complaint alleged Wunder's work was deficient in other respects unrelated to the siding, e.g., the plumbing leaked and the decking was defective, but the Mills did not seek to recover damages for harm caused by these other problems.

 ▬ ▬ The first cause of action alleged Forestex had willfully violated the Song-Beverly Consumer Warranty Act,[1] and also had breached an express warranty on the siding.[2] The second cause of action alleged the house was "defective in design and construction" and "unfit and unsafe for its intended purpose," and "[d]efendants, and each of them, knew or should have known of these defects [but] failed to warn plaintiff . . . ." ▬ ▬ Thus, this appears to be a claim for strict product liability directed at both Wunder and Forestex.[3] ▬ ▬ The third

---

[1]"The Song-Beverly Consumer Warranty Act . . . regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers [of consumer goods] who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties. [Citations.] It supplements, rather than supersedes, the provisions of the California Uniform Commercial Code. [Citations.]" (*Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 213 [285 Cal.Rptr. 717] (*Krieger*).) " 'Consumer goods' means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." (Civ. Code, § 1791, subd. (a).)

"Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief." (Civ. Code, § 1794, subd. (a).) "If the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages." (*Id.*, subd. (c).)

[2]The complaint included as an exhibit what was represented to be a copy of a limited 25-year warranty by Forestex on the type of siding installed on the Mills's house. It warranted the siding for 25 years "to be free of buckling attributable to the product itself," and warranted the paint coat on the siding for five years "against blistering or peeling under normal conditions of use and exposure." These warranties expressly did not cover, inter alia, a "failure to follow Forestex Co.'s installation instructions or to perform normal maintenance." The warranty covered only "the original owner of the structure on which the siding is installed."

[3]"In California, a manufacturer, distributor, or retailer of a defective product is strictly liable in tort for any resulting harm to a person *or* to property other than the product itself." (*Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 476 [127 Cal.Rptr.2d 614, 58 P.3d 450]

cause of action alleged the poor design and construction of the house and its components breached implied warranties of fitness and merchantability.[4]

---

(*Jimenez*).) This doctrine extends to a builder/vendor of *mass-produced* housing (*Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 228-229 [74 Cal.Rptr. 749]), and to a manufacturer of component parts installed in such housing. (*Jimenez, supra,* 29 Cal.4th at p. 481.) The Mills's was not a mass-produced house. (See *Oliver v. Superior Court* (1989) 211 Cal.App.3d 86, 89 [259 Cal.Rptr. 160] [doctrine of strict liability does not extend to a contractor who built two homes, at two different times, at two different locations].)

Moreover, a homeowner may not recover in tort, i.e., negligence or strict liability, for construction defects except insofar as they have caused property damage (to property other than the defective product itself) or personal injury. Purely economic losses, e.g., the cost to repair or replace the defective product, are recoverable only under contract or warranty law. (*Aas v. Superior Court* (2000) 24 Cal.4th 627 [101 Cal.Rptr.2d 718, 12 P.3d 1125]; see also *Jimenez, supra,* 29 Cal.4th at pp. 481-484 [discussing the "economic loss" rule]; *Carrau v. Marvin Lumber & Cedar Co.* (2001) 93 Cal.App.4th 281, 292-295 [112 Cal.Rptr.2d 869].) The Mills alleged they had suffered some damage to their house, e.g., leaking windows and splitting window frames, but only inferentially attributed the damage to the improper manufacture or installation of the siding. They did not allege any personal injury.

[4]"Under section 2315 [of the California Uniform Commercial Code], an implied warranty of fitness for a particular purpose exists where the seller at the time of contracting has reason to know (a) any particular purpose for which goods are required, and (b) that the buyer is relying on the seller's skill or judgment to select or to furnish suitable goods for such purpose. 'A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.' [Citation.]" (*American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291, 1295, fn. 2 [44 Cal.Rptr.2d 526].)

"(1) Unless excluded or modified . . ., a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . . [¶] (2) Goods to be merchantable must be at least such as [¶] . . . [¶] (c) Are fit for the ordinary purposes for which such goods are used; . . ." (Cal. U. Com. Code, § 2314; see also Civ. Code, § 1791.1, subds. (a) and (b) [similarly defining an implied warranty of merchantability and an implied warranty of fitness, respectively, for purposes of the Song-Beverly Consumer Warranty Act].)

Thus, warranties of fitness for a particular purpose and of merchantability are implied by law in a contract for the sale of goods. " 'Goods' means all things (including specially manufactured goods) which are movable at the time of indentification to the contract of sale . . . ." (Cal. U. Com. Code, § 2105, subd. (1).)

The theory of an implied warranty of quality and fitness has been extended by the courts beyond contracts for the sale of goods to contracts for the construction of a new home, and contracts for the sale of a newly constructed home. (*Pollard v. Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 378-380 [115 Cal.Rptr. 648, 525 P.2d 88].)

"Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability." (*All West Electronics, Inc. v. M-B-W, Inc.* (1998) 64 Cal.App.4th 717, 725 [75 Cal.Rptr.2d 509].) The Mills picked out the *type* of siding they wanted but were unaware until 1996 that the siding Wunder purchased and installed had been manufactured by Forestex. Wunder bought the siding from a local retailer.

This cause of action appears to be directed at Wunder only, but here again the complaint fails to specify.

The complaint stated the Mills had discovered the siding was failing to perform properly—"warping, separating, and buckling"—in May of 1996, and they had formally revoked their acceptance of the siding in July of 1997.

Wunder filed an answer to the complaint in which he generally denied the Mills's allegations and asserted numerous affirmative defenses, including that all causes of action were barred by the applicable statutes of limitation, and that a lack of privity barred the causes of action for breach of express or implied warranty.

Forestex demurred to the complaint on similar grounds.[5] In their opposition to the demurrer, the Mills asserted they had been in discussions with Forestex in the 14 months between their discovery of the siding problem in May of 1996 and their final rejection of the siding in July of 1997. They argued the limitations period therefore was equitably tolled during this period, and Forestex should be estopped in any case to assert the statute of limitations because it had induced them thereby to postpone filing their complaint. Forestex disputed these claims in its reply to the Mills's opposition. The court sustained the demurrer as to all three causes of action, with leave to amend.

The Mills filed a first amended complaint on February 2, 2001. They alleged additional facts regarding their discussions with Forestex in support of their contention the discussions had equitably tolled the running of statute of limitations, or had estopped Forestex to assert the statute. Wunder and Forestex both filed answers to the amended complaint.

### Wunder's Motion for Summary Judgment

On June 13, 2001, Wunder filed a motion for summary judgment or summary adjudication as to the second and third causes of action (for strict liability and breach of implied warranty, respectively). He maintained the undisputed facts established that the statute of limitations had run on both.

The Mills filed an opposition to the motion on July 15, 2001. They argued that Wunder had induced them to put off legal action by his promises to

---

[5] In addition, Wunder and Forestex each cross-complained against the other for indemnification.

repair the siding, and had concealed from them their potential claim against Forestex, such that, as in the case of Forestex itself, the statute of limitations was tolled or Wunder was estopped to assert it. With a few minor exceptions, they did not dispute Wunder's statement of undisputed facts. In their own statement of undisputed facts, they asserted essentially that they did not know until December of 1997 that Wunder had installed the siding improperly; that he would not repair it; and that he would not support their efforts to get Forestex to replace it. Wunder, in turn, filed a response in which he disputed the factual support for these claims, and lodged assorted evidence and relevance objections.

Wunder argued, moreover, that the Mills should be limited to arguing theories pleaded in their first amended complaint, which had not sought to avoid application of the statute of limitations under the theories of estoppel, equitable tolling, or fraudulent concealment *by Wunder* (only by Forestex). As we discuss more fully below, the Mills subsequently appeared at the summary judgment hearing on July 30, 2001, and requested leave to amend their complaint to assert these theories. The court denied the request for lack of notice to the defendants. On August 9, the Mills filed a noticed motion making the same request. The matter was then set for hearing on September 24, 2001. In the meantime, however, the court granted Wunder's motion for summary judgment on August 24, 2001. Thereafter, at Wunder's request, the court removed the Mills's motion from the calendar as having become moot.

The court's order granting Wunder's motion for summary judgment stated in part:

"[The Mills] allege two causes of action against Wunder in their first amended complaint, both arising from the written contract. The defects in the construction alleged by [the Mills] are patent, not latent, and the applicable statute of limitations is [four years as provided in] Code of Civil Procedure Section 337. . . . [Wunder's] motion for summary judgment is based on the fact that [the Mills's] causes of action arose not later than 1994 and [the Mills] did not file suit until September 15, 2000, approximately six years later. [The Mills] argue[] that the statute of limitations was equitably tolled as to defendant Wunder and that Wunder is estopped to assert the statute of limitations. [¶] . . . [¶]

"[The Mills] have produced no evidence of statements or conduct by defendant Wunder after 1994 that could have induced them to forbear filing suit. If the statute of limitations was equitably tolled during the time that Wunder made repairs in 1993 and 1994, the tolling ended when he quit working and failed to return to the job. No reasonable person with the

information that [the Mills] had in 1994 would further rely on defendant Wunder.

"The Court finds that there is no triable issue of material fact on the question of whether the statute of limitations expired long before this lawsuit was filed against defendant Mike Wunder."

### Forestex's Motion for Summary Judgment

Forestex filed a motion for summary judgment or summary adjudication on June 22, 2001. Curiously, although Forestex had been clearly identified as a defendant only as to the first cause of action (for breach of the Song-Beverly Consumer Warranty Act), the caption on its pleadings indicated the summary judgment motion was directed at the second and third causes of action only. The motion itself, however, argued all three causes of action were barred by the applicable statutes of limitation.

The Mills did not file pleadings in opposition to Forestex's motion separate from those they filed in opposition to Wunder's motion. Indeed their opposition, as just noted, was addressed almost entirely to their contention Wunder should be estopped to assert the statute of limitations. They did not respond at all to Forestex's statement of undisputed facts, nor assert undisputed facts of their own to counter Forestex's statute of limitations claims. Nonetheless, Forestex filed a response to the Mills's opposition (to Wunder's motion) in which it maintained the Mills had failed to provide any factual support for their estoppel and equitable tolling arguments.

The court's order granting Forestex's motion for summary judgment stated in part:

"[The Mills] first inquired about the manufacturer of the siding in 1996. They wrote to Forestex in 1997 requesting that their siding be replaced. They did not file suit until September 15, 2000.

"The Forestex siding in question is subject to a written [25-year] warranty. Assuming without deciding that [the Mills] are third-party beneficiaries of the warranty, this action is subject to the four-year statute of limitations in Code of Civil Procedure section 337. The defect in the siding is a patent defect.

"[The Mills] contend that the statute of limitations was equitably tolled as to Forestex based on settlement discussions which occurred in 1997 and 1998. The only evidence presented by [the Mills] that could possibly be

construed as an inducement to [them] to forbear filing suit is a letter dated August 26, 1998, in which [Forestex] rejects a bid submitted by [the Mills to replace all the siding] but expresses confidence that the parties would be able to reach agreement on a settlement. Unfortunately for [the Mills], that letter was written after the statute of limitations had already run.

"The Court finds that there is no triable issue of material fact on the question of whether the statute of limitations expired before this lawsuit was filed against defendant Forestex Co."

### The Mills's Appeals

The court entered judgments for Wunder and Forestex on September 5 and September 11, 2001, respectively. The Mills filed a timely notice of appeal from both judgments.

### DISCUSSION

The Mills raise five issues on appeal. They argue (1) the trial court should have permitted them to amend their complaint as to Wunder to plead facts in support of their theories of equitable tolling and estoppel; (2) the statute of limitations had not run on their claims because the harm caused by the siding was continuing and progressive; (3) the statute had not run because they did not discover the harm until December of 1997; (4) the limitations period was equitably tolled; and (5) Wunder and Forestex should be estopped to assert the statute.

### I. The Standard of Review

█ "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

The trial court properly grants a motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[6]

█ We generally review the court's decision de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) But we

---

[6]Except as noted, all further statutory citations refer to the Code of Civil Procedure.

review the decision for an abuse of discretion when the court granted or denied a motion for summary judgment in the exercise of its equitable powers. (*Centennial Ins. Co. v. United States Fire Ins. Co.* (2001) 88 Cal.App.4th 105, 111 [105 Cal.Rptr.2d 559].) "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it." (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].)

Because we review the trial court's ruling, not its rationale, we are not bound by the explanation the lower court gave in support of its decision. (*Szadolci v. Hollywood Park Operating Co.*, *supra*, 14 Cal.App.4th 16, 19.)[7]

■ "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923]; see also *FNB Mortgage Corp. v. Pacific General Group* (1999) 76 Cal.App.4th 1116, 1126 [90 Cal.Rptr.2d 841].)

Finally, we note the Mills have gone to considerable effort in their appellate briefs to point out facts in support of their contention they did not discover the siding problem until 1997. These typically are not facts they chose to set out in a separate statement of material facts in response to the defendants' motions for summary judgment. (§ 437c, subd. (b); see also *id.*, subd. (p)(2) [opposing party may not rely on mere allegations or denials in its pleadings].) ■ It may be helpful, therefore, to restate the general rule that we will consider only those facts that were before the trial court when it ruled on the motions. (*Jacobs v. Retail Clerks Union, Local 1222* (1975) 49 Cal.App.3d 959, 966 [123 Cal.Rptr. 309].) This, in turn, means the facts contained in the parties' separate statements.

"[T]he statutory mandate for a separate statement [requires] a party to *specify within that document* any facts he deems to be disputed facts material to the issue presented. . . . [T]he statement serves two functions: to give the opponent notice of the facts; and to permit the trial court to focus on the facts germane to the issues. [Citation.] . . . [Therefore,] 'it is no answer to say the facts set out in the supporting evidence or memoranda of points and authorities are sufficient. "Such an argument does not aid the trial court at all

---

[7]We are aware of section 437c, subdivision (m)(2), which took effect on January 1, 2003. It provides that a reviewing court, before it may affirm an order granting a motion for summary judgment on a ground not relied on by the trial court, must afford the parties an opportunity to submit supplemental briefing on the issue. It, however, does not apply in this case.

since it then has to cull through often discursive argument to determine what is admitted, what is contested, and where the evidence on each side of the issue is located." ' [Citations.] . . . '[*A*]*ll* material facts must be set forth in the separate statement. "This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist.*" ' [Citation.] Thus, when the 'fact' is not mentioned in the separate statement, it is irrelevant that such fact might be buried in the mound of paperwork filed with the court, because the statutory purposes are not furthered by unhighlighted facts." (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 30-31 [21 Cal.Rptr.2d 104]; see also *Thrifty Oil Co. v. Superior Court* (2001) 91 Cal.App.4th 1070, 1075, fn. 4 [111 Cal.Rptr.2d 253]; *Fleet v. CBS, Inc.* (1996) 50 Cal.App.4th 1911, 1916, fn. 3 [58 Cal.Rptr.2d 645].)

## II. *The Motion to Amend the Complaint*

When a plaintiff relies on a theory of fraudulent concealment, delayed accrual, equitable tolling, or estoppel to save a cause of action that otherwise appears on its face to be time-barred, he or she must specifically plead facts which, if proved, would support the theory. (*McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 160 [86 Cal.Rptr.2d 645]; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 883-886, pp. 342-346.)

A plaintiff who fails to sufficiently plead such facts normally should be permitted to amend his or her complaint to do so. "[I]f summary judgment is granted on the ground that the complaint is legally insufficient, but it appears from the materials submitted in opposition to the motion that the plaintiff could state a cause of action, the trial court should give the plaintiff an opportunity to amend the complaint before entry of judgment. [Citations.] [¶] . . . [¶] . . . Declarations in opposition to a motion for summary judgment 'are no substitute for amended pleadings.' [Citation.]" (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663-1664 [42 Cal.Rptr.2d 669].)

The Mills contend the court should have allowed them to amend their complaint to plead facts in support of their theories of equitable tolling and estoppel as to their claims against Wunder. Plainly, however, the court did *not* grant Wunder's motion for summary judgment on the ground their complaint was insufficient in this regard. To the contrary, the court expressly considered these theories *and* the facts the Mills offered in support of them in their opposition to Wunder's motion, but it found as a matter of law that the facts failed to support the theories. The Mills would have gained nothing from the opportunity to amend their complaint.

## III. *The Statutes of Limitation*

Like the claims asserted in their complaint, the Mills's arguments regarding the statutes of limitation are confusingly generic; they fail to specify the defendant(s) and/or cause(s) of action to which they are meant to refer. Different statutes apply in the various contexts.

### A. *Breach of Warranty—Sale of Goods*

As we have said, the Song-Beverly Consumer Warranty Act, which appears in the Civil Code, supplements rather than supercedes the provisions of the California Uniform Commercial Code. (Civ. Code, § 1790.3; *Krieger, supra,* 234 Cal.App.3d at p. 213.) The act itself contains no express limitations period for a civil action alleging a violation of its terms. However, section 2725 of the California Uniform Commercial Code provides a four-year limitations period for breach of warranty.[8] ▮ As this provision is more specific than the provisions of either section 338, subdivision (a) (which provides a three-year limitations period for actions based on a liability created by statute) or section 337, subdivision 1 (which provides a four-year limitations period for actions founded upon a written agreement), California Uniform Commercial Code section 2725 governs breach of warranty claims arising from the sale of goods. (*Krieger,* at p. 215; *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 132 [41 Cal.Rptr.2d 295].) ▮ A cause of action for breach of warranty of future performance, such as Forestex's 25-year warranty on the siding, accrues upon discovery of the breach. (*Krieger, supra,* 234 Cal.App.4th at pp. 215-216. See also *Carrau v. Marvin Lumber & Cedar Co., supra,* 93 Cal.App.4th at pp. 290-292 [discussing the scope of "future performance" exception].)

Thus, subject to tolling or estoppel, the Mills were required to bring their breach of warranty claims against Forestex—those asserted in the first and third causes of action—within four years from the date they discovered, or should have discovered, the siding was not performing properly. ▮ "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he

---

[8]Section 2725 of the California Uniform Commercial Code provides in part:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person *on inquiry* . . . .' " ' [Citations.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d 1103, 1110-1111, fn. omitted.)

### B. *Latent and Patent Construction Defects*

Sections 337.1 and 337.15 apply to actions for damages against persons involved in the construction of improvements to real property, such as Wunder, and establish four-year and 10-year statutes of limitation for patent and latent defects, respectively.[9] (*Winston Square Homeowner's Assn. v. Centex West, Inc.* (1989) 213 Cal.App.3d 282, 290 [261 Cal.Rptr. 605] (*Winston Square*).) ██ Neither section applies to the manufacturer of a product incorporated into the improvement, as Forestex was in this case. (*Nichols v. Swimquip* (1985) 171 Cal.App.3d 216 [217 Cal.Rptr. 272]; *Baker v. Walker & Walker, Inc.* (1982) 133 Cal.App.3d 746 [184 Cal.Rptr. 245]; *Sevilla v. Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608 [161 Cal.Rptr. 700].)

---

[9] Section 337.1 states in part:

"(a) Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing . . . the . . . construction of an improvement to real property more than four years after the substantial completion of such improvement for any of the following:

"(1) Any patent deficiency in the . . . construction of an improvement to . . . real property;

"(2) Injury to property, real or personal, arising out of any such patent deficiency; [¶] . . . [¶]

"(e) As used in this section, 'patent deficiency' means a deficiency which is apparent by reasonable inspection."

Section 337.15 states in part:

"(a) No action may be brought to recover damages from any person . . . who . . . performs . . . the . . . construction of an improvement to real property more than 10 years after the substantial completion of the . . . improvement for any of the following:

"(1) Any latent deficiency in the . . . construction of an improvement to . . . real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency.

"(b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection."

Although sections 337.1 and 337.15 use the term "deficiency," cases discussing these sections more often use the term "defect" to mean the same thing. (*Tomko Woll Group Architects, Inc. v. Superior Court* (1996) 46 Cal.App.4th 1326, 1332, fn. 2 [54 Cal.Rptr.2d 300] (*Tomko*).)

■ The limitation periods in sections 337.1 and 337.15 start to run upon "substantial completion" of the improvement, and establish the *outside limit* within which an action must be filed, regardless of when the defect is discovered. That is, while the limitations period may in certain circumstances be less than the limit specified in the statute, it cannot be more. (*Roger E. Smith, Inc. v. SHN Consulting Engineers & Geologists, Inc.* (2001) 89 Cal.App.4th 638, 649 [107 Cal.Rptr.2d 424].) The notice of completion on the Mills's house was filed on March 20, 1991.

■ Which of the two statutes applies turns on whether the defect is latent or patent. "Whether a construction defect is latent or patent depends on whether it is 'apparent by reasonable inspection.' (§§ 337.1, subd. (e); 337.15, subd. (b).) A patent defect ' "is one which can be discovered by such an inspection as would be made in the exercise of ordinary care and prudence. [Citations.] This is contrasted with a latent defect, one which is hidden and which would not be discovered by a reasonably careful inspection. [Citations.]" ' [Citations.] [¶] 'Whether a defect is apparent by reasonable inspection is a question of fact.' [Citations.] What constitutes a *reasonable* inspection 'is a matter to be determined from the totality of circumstances of the particular case[]' and 'must vary with the nature of the thing to be inspected and the nature and gravity of the harm which is sought to be averted.' [Citation.] Whether a reasonable inspection would render a defect apparent is determined in light of 'the reasonable expectations of the average consumer.' [Citations.]" (*Geertz v. Ausonio* (1992) 4 Cal.App.4th 1363, 1367-1368 [6 Cal.Rptr.2d 318], fn. omitted (*Geertz*); see *Tomko, supra,* 46 Cal.App.4th at p. 1339 [test is objective one]; *Mattingly v. Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506, 511 [167 Cal.Rptr. 292].)

The trial court found the defect in the siding was patent, such that the four-year statute of limitations in section 337 applied to the Mills's claims against both Wunder and Forestex.[10] The parties seem to proceed from this premise and argue mainly about *when* the defect became patent. We believe this whole discussion, which also appears in some of the reported cases, confuses a construction defect with its subsequent manifestations. (See, e.g.,

---

[10]The court probably meant to refer to the four-year limitations period in section 337.1, rather than in section 337. The latter statute, in *subdivision* 1, applies generally to "[a]n action upon any contract, obligation or liability founded upon an instrument in writing." Unlike section 337.1, section 337 is not limited to construction deficiencies, and thus makes no distinction between latent and patent defects.

Moreover, as we have explained, *neither* section 337 nor section 337.1 applies to breach of warranty claims arising from the sale of goods; such claims (i.e., those alleged against Forestex in the first and third causes of action) are covered instead by the four-year limitations period in section 2725 of the California Uniform Commercial Code. The present discussion, therefore, is limited to the Mills's claims against *Wunder* alleged in the third cause of action.

*North Coast Business Park v. Nielsen Construction Co., supra,* 17 Cal.App.4th at p. 27 [drainage problem that caused building slab to crack was a latent defect]; *Geertz, supra,* 4 Cal.App.4th at pp. 1371-1372 [flooded deck was manifestation of a drainage defect]; *Baker v. Walker & Walker, Inc., supra,* 133 Cal.App.3d at pp. 759-763 [faulty heating and air conditioning system was a latent defect although its effects were obvious]; cf. *Tomko, supra,* 46 Cal.App.4th 1326 [raised paving stones on patio, which arose several years after building was completed, was a patent defect]; *Winston Square, supra,* 213 Cal.App.3d at p. 292 [treating drainage problem as patent defect because it was the obvious cause of standing water].)[11] ▉ We conclude the defect at issue here was latent, and thus subject to the 10-year statute of limitations in section 337.15.

The Mills alleged Wunder installed the siding incorrectly by failing to first sheath the house or put down a vapor barrier, or to install clips or expansion joints. *This* was the construction deficiency. As a consequence, allegedly, the siding absorbed moisture in wet weather and expanded, causing it to buckle, warp, and separate, the nails to pop out, and the paint to peel off. These were all manifestations of the deficiency. The absence of an adequate vapor barrier was a latent defect, hidden from view beneath the

---

[11]In *Tomko,* the court held section 337.1 applies not only to patent deficiencies that exist upon substantial completion of a construction project, but also to patent deficiencies that do not arise until sometime *thereafter.* (*Tomko, supra,* 46 Cal.App.4th at p. 1336.) It would be anomalous, however, to hold a builder or designer liable for a construction flaw that did not yet exist at the time he or she left the project. Put another way, under the basic principles of causation, liability can only arise if something the builder or designer did or did not do prior to completion of the project can be shown to have caused the postcompletion injury. It stands to reason then that the underlying defect must exist at the time of substantial completion, when the statute of limitations starts to run. (See *Kralow Co. v. Sully-Miller Contracting Co.* (1985) 168 Cal.App.3d 1029, 1035 [214 Cal.Rptr. 630] [§ 337.1 applies only to patent deficiencies existing upon substantial completion].) Indeed, it seems to us redundant to talk about "deficiencies existing upon completion" as if there were any other kind. The question should be whether the deficiency was patent or latent *at the time of substantial completion.* (See also *Roger E. Smith, Inc. v. SHN Consulting Engineers & Geologists, Inc., supra,* 89 Cal.App.4th at pp. 643-647 [§ 337.1 does not apply to claims of injury based on patent deficiencies that no longer exist upon substantial completion].)

In *Winston Square,* the court held the plaintiffs' action was barred under either section 337.1 or section 337.15, whichever one applied. The problem there was standing water within a townhouse development, caused evidently by a defective drainage system. The trial court found the defect was patent because the standing water was obvious even before the development was completed, such that the drainage problem was, or should have been, readily discoverable. The appellate court agreed. "The testimony shows the actual defect was easily observable. There appears to have been no dispute at trial over the cause of the drainage problems." (*Winston Square, supra,* 213 Cal.App.3d at p. 291.) Nonetheless, the court then went on to explain the result would be the same even if the drainage problem were characterized as a latent defect. (*Id.* at p. 292.) Thus, it seems both the trial court and the appellate court treated the standing water sometimes as the defect itself and other times as the condition that put the plaintiffs on notice of the defect.

siding. (See, e.g., *Renown, Inc. v. Hensel Phelps Construction Co.* (1984) 154 Cal.App.3d 413, 420 [201 Cal.Rptr. 242] ["The word ['latent'] connotes that which is submerged and not clearly apparent or certainly present to any but a most searching examination, but whose significance and effect may later emerge or develop"].) The subsequent buckling, warping, and peeling were obvious, of course. However, they did not turn a latent defect into a patent one; they simply put the Mills on notice at some point that something was wrong with the siding, and that a further inquiry was necessary. The question then is just when exactly did this point arrive; when can it be said the Mills discovered, or should have discovered, the defect?

Discovery of a latent defect within the 10-year limitations period under section 337.15 triggers a second, shorter period under either section 337 or 338. "With judicial recognition that under some circumstances causes of action for negligence, product liability, or breach of warranty may not arise until discovery, the Legislature has responded by enacting statutes of limitation which require suit be filed within the shorter of two periods, one measured from the date of discovery and a second, longer period measured from the event giving rise to the cause of action. Section 337.15, read together with . . . sections 337 and 338, enacts such a two-step limitation: actions founded upon a latent defect in the development of real property must be filed within three or four years of discovery, depending on whether the action rests on breach of warranty [section 337] or negligence [section 338], but in any case within ten years of the date of substantial completion of the improvement."[12] (*Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 640-641 [147 Cal.Rptr. 486, 581 P.2d 197], fn. omitted; see also *FNB Mortgage Corp. v. Pacific General Group, supra,* 76 Cal.App.4th 1116, 1127; *A & B Painting & Drywall, Inc. v. Superior Court* (1994) 25 Cal.App.4th 349, 355 [30 Cal.Rptr.2d 418].)

Discovery occurs, and so either section 337 or 338 begins to run, "only after the damage is sufficiently appreciable to give a reasonable man notice that he has a duty to pursue his remedies." (*North Coast Business Park v. Nielsen Construction Co., supra,* 17 Cal.App.4th at p. 27; *Liptak v. Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 769 [167 Cal.Rptr. 440].) Here we are concerned with the Mills's claims against Wunder in the third cause of action for breach of implied warranties of fitness and merchantability. Since they arose from the construction contract, the claims were subject to the four-year limitations period in section 337, subdivision 1. The period began to run upon discovery of the defective siding.

---

[12]The four-year limitations period in section 337 applies, inter alia, to an "action upon any contract, obligation or liability founded upon an instrument in writing." (§ 337, subd. 1.) The three-year period in section 338 applies, inter alia, to an "action for trespass upon or injury to real property." (§ 338, subd. (b).)

## C. *Strict Liability*

Assuming the Mills adequately stated a claim for strict products liability in the second cause of action, a proposition that appears doubtful, the action against Wunder was subject to section 337.15. (*Stoneson Development Corp. v. Superior Court* (1987) 197 Cal.App.3d 178 [242 Cal.Rptr. 721].) Upon discovery of the latent defect, the action was governed by the three-year statute of limitations in section 338, subdivision (b), in that the defect caused an injury to real property. (*Angeles Chemical Co. v. Spencer & Jones* (1996) 44 Cal.App.4th 112, 119-120 [51 Cal.Rptr.2d 594].) The Mills's strict liability claim against Forestex likewise was governed by section 338, subdivision (b) (without the prior intervention of § 337.15).

## D. *Discovery*

We turn finally to the central question in this appeal: When was the damage to the siding on the Mills's house sufficiently appreciable to give a reasonable person notice he or she had a duty to pursue legal remedies? (*North Coast Business Park v. Nielsen Construction Co., supra,* 17 Cal.App.4th at p. 27.)

The following facts are undisputed.[13] The notice of completion of the house was filed on March 20, 1991. Lori Mills first noticed problems with the siding (buckling and rippling) in 1991 or 1992, and spoke with Wunder about it soon afterward. Robert Mills first noticed the siding was warping in the winter of 1992-1993, and also spoke to Wunder. The siding was "certainly buckling" by April of 1993, and the paint was peeling by the summer of that year. Wunder tried to repair the problem around this time by cutting the siding panels in half. This effort was unsuccessful, and the problem grew progressively worse. The siding "really started to warp" the next year, and extended to three sides of the house. The warping was "really extreme" by the winter of 1994-1995, and remained "pretty much the same" thereafter. The Mills filed their complaint on September 15, 2000, within 10 years after Wunder completed his work on their house. (*Industrial Risk Insurers v. Rust Engineering Co.* (1991) 232 Cal.App.3d 1038, 1040 [283 Cal.Rptr. 873] [10-year time limit under section 337.15 starts to run when the *defendant's* work on the improvement is substantially completed, not when the improvement itself is substantially completed].)

In opposition to the defendants' motions, the Mills asserted, as undisputed facts, that although Wunder made his only attempt to repair the siding in

---

[13]These facts, taken from the defendants' separate statements, were conceded by the Mills either explicitly or by their failure to respond to them.

1993, they continued to believe he would correct the problem until December of 1997, when they learned for the first time that he had installed the siding incorrectly (because Forestex told them so), and that he would not support their efforts to get Forestex to make good on its warranty. They were in negotiations with Forestex, the Mills said, until August of 1998. They also asserted they had no previous training or experience in construction. In response, Wunder objected to all these assertions except the last on foundational or factual grounds. The trial court did not expressly rule on Wunder's objections. (See *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207] [failure to obtain ruling on objections amounts to a waiver].)

On appeal the Mills argue that, although they noticed the siding starting to warp shortly after Wunder completed work on their house in 1991, they "had no knowledge, and hence, had not discovered the identity of the manufacturer of the siding; the defective nature of the siding; the warranties applicable to the siding; the improper installation of the siding; and the failed attempted repairs to the siding by [Wunder]" until sometime in mid-1997.[14] In the meantime, they maintain, Wunder had made "various assurances and representations regarding the siding and attempted various repairs." And up until then, they add, "even [Forestex] treated the problems with the siding as essentially minor." So, the Mills conclude, the statute of limitations did not begin to run until mid-1997, when "the damage first became appreciable and actual *and* [they] first discovered the nature and extent of the harm."

We find two general problems with this argument. ▇▇ First, the discovery rule uses an objective test that looks not to what the particular plaintiff actually knew but to what a reasonable inquiry would have revealed. (See *Geertz, supra,* 4 Cal.App.4th at pp. 1369-1370 [reasonable inspection test *assumes* inspection was made].) ▇▇ Second, the limitations period begins to run when the circumstances are sufficient to raise a suspicion of wrongdoing, i.e., when a plaintiff has notice or information of circumstances sufficient to put a reasonable person on inquiry. (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at pp. 1110-1111.) Thus, the "plaintiff need not

---

[14]Wunder had purchased the siding from a local retailer named Andy's True Value Hardware (Andy's). The Mills contacted Andy's about the siding for the first time in 1996. Andy's told them the siding had been manufactured by Forestex, and gave them the company's toll-free number in Oregon. The Mills called and talked to a Forestex representative, Gerald Hoerber, who said he would come to their house to inspect the siding on his next trip to California. Hoerber did indeed visit the house sometime in mid-1997, but neither of the Mills was home at the time. Several letters and telephone calls followed. It was Hoerber who told the Mills the siding had been installed incorrectly. He also sent them a copy of Forestex's 25-year warranty, and offered to pay to replace some of the siding. The Mills did not accept the offer.

be aware of the specific 'facts' necessary to establish the claim." (*Id.* at p. 1111.) Moreover, "ignorance of the legal significance of known facts or the identity of the wrongdoer will not delay the running of the statute." (*Id.* at p. 1112, fn. 8.)

 Consequently, the fact the Mills waited until 1996 to make the inquiry that led them to Forestex, and to Forestex's assertion in turn that Wunder had installed the siding improperly, does not resolve the issue before us. The siding indisputably was warping and buckling, and the paint was peeling off, by the summer of 1993. Around this same time, Wunder tried without success to correct the problem by cutting the individual siding panels in half. That these measures were necessary was evidence enough something was wrong with the siding. "Repair suggests discovery of a latent defect and commencement of a shorter period of limitation." (*A & B Painting & Drywall, Inc. v. Superior Court, supra,* 25 Cal.App.4th at p. 355; *Geertz, supra,* 4 Cal.App.4th at pp. 1367-1368.)

The Mills argue they had no duty of inquiry, or at least less of a duty, because they had no experience in construction and because they had a fiduciary or agency relationship with Wunder that entitled them to rely on his expertise. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 606, pp. 779-780 [no duty of inquiry in confidential relationships].) We disagree. A duty of inquiry arises independently of a particular plaintiff's subjective knowledge. (See *Geertz, supra,* 4 Cal.App.4th at p. 1368, fn. 3 [questioning suggestion in *Renown, Inc. v. Hensel Phelps Construction Co., supra,* 154 Cal.App.3d at pp. 420-421 that a plaintiff with special knowledge has a heightened duty of inquiry].) Indeed, a plaintiff may be held to have discovered a defect even if he or she lacked access or an opportunity to conduct an inspection. (*Geertz, supra,* 4 Cal.App.4th at pp. 1369-1370.) As for their second point, the Mills have provided no factual or legal support for their claim they had a confidential relationship with Wunder. (See *McCauley v. Dennis* (1963) 220 Cal.App.2d 627, 636 [34 Cal.Rptr. 90] [no fiduciary relationship exists between a building contractor and the person who engages his services].) Nor did the Mills raise this claim at any point in the trial court.

Finally, the Mills contend the problem with their siding was especially difficult to discover because the resulting harm was "continuing and progressive," citing *Bradler v. Craig* (1969) 274 Cal.App.2d 466, 471 [79 Cal.Rptr. 401]. This theory was raised by the plaintiff in *Bradler,* an action by a homeowner to recover damages for negligent construction, and was essentially an early expression of the discovery rule. ██ ██ " 'Only when the consequential damage is sufficiently appreciable to a reasonable

man may we hold an owner to a duty of expeditiously pursuing his remedies.' " (*Ibid.*, citing *Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, 255 [73 Cal.Rptr. 127].)[15] ▪ It does not alter the rule that a cause of action accrues when the plaintiff discovers, *or has the opportunity to discover*, the necessary facts underlying his or her claim. (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 955 [112 Cal.Rptr.2d 329].)

We conclude as a matter of law that the siding problem on the Mills's house was sufficiently appreciable no later than the summer of 1993 to put them on notice to pursue their remedies, and consequently to start the three- and four-year statutes of limitation to run. Absent equitable tolling of the statutory periods, or an estoppel to assert them, the Mills filed their complaint too late.

### E. *Equitable Tolling*

▪ The doctrine of equitable tolling is a rule of procedure adopted by the courts and operates independently of the Code of Civil Procedure. (*Addison v. State of California* (1978) 21 Cal.3d 313, 318-319 [146 Cal.Rptr. 224, 578 P.2d 941] (*Addison*).) "It is fundamental that the primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available. . . . [Citations.] . . . However, courts have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage. [Citations.] [¶] . . . [¶] . . . [A]pplication of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." (*Addison, supra,* 21 Cal.3d at pp. 317-319; see also *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 409 [75 Cal.Rptr.2d 257].)

▪ The Mills maintain the doctrine applies to their action against Forestex because they made a warranty claim to the company sometime in the middle of 1997 and engaged in negotiations continuously thereafter until

---

[15]A " 'progressively developing or continuing wrong' " may give rise to a new cause of action, and start a new limitations period running, with each successive manifestation of a latent defect. (*Avner v. Longridge Estates* (1969) 272 Cal.App.2d 607, 616-617 [77 Cal.Rptr. 633].) The test is whether a reasonable inspection and further inquiry after discovery of the initial defect would have disclosed the full extent of the problem. (*Ibid.*; see also *Anderson v. Brouwer* (1979) 99 Cal.App.3d 176 [160 Cal.Rptr. 65].) The Mills do not argue the problem with the siding was continuing and progressive in this respect, nor would it appear that it was. (Cf. *Winston Square, supra,* 213 Cal.App.3d at pp. 287-289 [limitations period started to run at different times for separate areas of damage such that attempted repair to one type of damage did not toll statute as to others].)

August of 1998.[16] However, the Mills point to nothing in the parties' separate statements of undisputed facts that supports their position, nor can we find anything that does. As we noted above, the Mills failed to file a response to Forestex's motion for summary judgment challenging its separate statement of facts, or asserting facts of their own. Forestex's separate statement establishes only that it wrote a letter to the Mills on June 25, 1997, regarding its earlier inspection of their house.

Documents attached to Forestex's motion include the letter and other subsequent correspondence. The June 25th letter made mention of the warranty, but did not include a copy of it, and offered the Mills a $3,050 cash settlement to replace the 81 pieces of siding Forestex found had not performed according to specifications. The Mills rejected the offer in a letter dated July 24, 1997, claiming the offer was too low. In August, Forestex invited the Mills to submit cost estimates in support of a higher figure. The Mills then obtained a bid for $34,415 to remove all the existing siding, sheath and wrap the house, and install and paint new siding. Forestex responded in a letter dated August 26, 1998, reiterating its offer to pay only for the 81 pieces of defective siding.

The Mills contend their warranty claim was "officially made" in the July 24, 1997, letter to Forestex. Assuming for the sake of discussion that the four-year limitations period on the Mills's claims against Forestex was tolled from July 24, 1997, until August 28, 1998, the time within which they were required to file the claims would have been extended by 13 months from the summer of 1997 to the late summer of 1998. The three-year period, of course, would have expired one year earlier in the summer of 1997. Again, the Mills did not file their complaint until September 15, 2000.

The Mills contend the limitations period on their claims against Wunder was tolled pending resolution of the consumer complaint they filed against him with the Contractors State License Board on December 31, 1997. They propose this theory for the first time on appeal, notwithstanding the general rule that " 'possible theories not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal.' [Citation.]" (*North Coast Business Park v. Nielsen Construction Co.*, *supra*, 17 Cal.App.4th at p. 31, italics omitted.) In any event, the four-year limitations period had expired the summer before. "Tolling can only suspend the running of a statute that still has time to run; it cannot

---

[16]We note that the Mills, in response to Forestex's demurrer to their complaint, argued the statute of limitations should have been tolled from May of 1996 (when they first contacted Forestex) until July of 1997 (when Forestex allegedly refused to replace the siding or refund the purchase price).

revive a statute which has already run out." (*Forman v. Chicago Title Ins. Co.* (1995) 32 Cal.App.4th 998, 1006 [38 Cal.Rptr.2d 790].)

### F. *Estoppel*

Finally, the Mills contend Wunder, "and possibly Forestex," should be estopped to assert the statutes of limitations because they fraudulently concealed or failed to disclose important information. The Mills's subsequent argument, however, is limited to Wunder. We therefore decline to consider the issue of estoppel as to Forestex. (See *MST Farms v. C. G. 1464* (1988) 204 Cal.App.3d 304, 306 [251 Cal.Rptr. 72] ["This court is not required to discuss or consider points which are not argued or which are not supported by citation to authorities or the record"].)

A defendant will be estopped to assert the statute of limitations if the defendant's conduct, relied on by the plaintiff, has induced the plaintiff to postpone filing the action until after the statute has run. (3 Witkin, Cal. Procedure, *supra*, Actions, § 685, pp. 872-873.) " 'One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.' " (*Carruth v. Fritch* (1950) 36 Cal.2d 426, 433 [224 P.2d 702, 24 A.L.R.2d 1403].)

"It is not necessary that the defendant acted in bad faith or intended to mislead the plaintiff. [Citations.] It is sufficient that the defendant's conduct in fact induced the plaintiff to refrain from instituting legal proceedings. [Citation.]" (*Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 43 [21 Cal.Rptr.2d 110].) " 'To create an equitable estoppel, "it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." [Citation.]' [Citation.] [¶] In the usual case, estoppel is a question of fact to be resolved by the trier of facts. However, when 'the facts are undisputed, the existence of an estoppel is a question of law.' [Citation.]" (*Bertorelli v. City of Tulare* (1986) 180 Cal.App.3d 432, 440 [225 Cal.Rptr. 582].)

The Mills maintain in particular that Wunder promised to repair the siding on their house, and that they relied on his promises, until the end of 1997. They assert further that Wunder failed to disclose until then that he had installed the siding incorrectly; he failed to disclose the existence of the Forestex warranty; and he failed to act on their behalf with Forestex.

The Mills's separate statement of undisputed material facts, filed in opposition to Wunder's summary judgment motion, contains only three asserted facts that arguably support these claims: the Mills *believed* until 1997 that Wunder was going to repair the siding; they did not know until then that Wunder had installed the siding incorrectly; and they did not know until then that Wunder would not support them in their claims against Forestex.

The one-page portion of Robert Mills's deposition testimony cited as the basis for these asserted facts is even more ambiguous. Robert testified he had a conversation with Wunder in late 1997 in which he (Robert) mentioned the possibility of filing a claim against Forestex; that Wunder acted "guarded" and "apprehensive"; that Robert was left with "the impression he [Wunder] wasn't going to be there to support us"; and that "sometime shortly after that, it finally dawned on me that he didn't follow the instructions [on how to install the siding]." That is, Robert *assumed* Wunder would not assist in a claim against Forestex for fear it would reveal he had installed the siding improperly.

We have reviewed the rest of Robert's deposition testimony, and all of Lori's as well, for evidence of Wunder's "representations and promises" to them "through the end of 1997" that he would repair the defective siding. More importantly, we have looked for evidence that the Mills put off filing suit against Wunder in reliance on these promises. We have not found much.

According to Robert, the workers on Wunder's construction crew "were always complaining about how he would try to shortcut this or he'd always use the cheapest materials possible." In fact, there would turn out to be several problems with Wunder's work in addition to the warped siding. Robert testified that by the winter of 1993-1994, after Wunder had resawn the siding and completed the other projects he had agreed to do for the Mills, they noticed that he "had a real problem with coming back and following up and standing behind his work."

Robert called Wunder in the winter of 1993-1994 and told him the resawing had not solved the siding problem, that the problem had actually grown worse, and that the siding "was really starting to buckle" on three sides of the house. Wunder reportedly responded that "he was going to get with the manufacturer and find out what he could do about it." However, the Mills heard nothing from Wunder for another year.

By the following winter, 1994-1995, the warping was "really extreme" and there was "so much buckling and movement going on that the nails he

[Wunder] used to secure to the side of the house [were] backing out," and the window trim was starting to split. Robert called Wunder again. Asked to explain why he continued to look to Wunder despite his failure to correct the siding problem, Robert replied: "Mike—as far I was concerned, he was still our agent. He built the house. At that point he is still making some repairs on the house and things that he didn't do right the first time. He was still working on them. [¶] We're talking about—this is probably a year after the last project that I had him working on our house for. We had faith in Mike. It was around that same period of time that we started to see the pattern that Mike wasn't taking care of business." Another year passed in which Wunder did nothing to repair or replace the siding.

By the winter of 1995-1996, the Mills were "pretty much convinced" Wunder was not going to do anything about the siding problem. It was in 1996 that Lori contacted Andy's and discovered the siding had been manufactured by Forestex. As mentioned, she contacted Forestex soon afterward and arranged for a representative to come and inspect the house. She also obtained a copy of the Forestex warranty and, according to Robert, a copy of the installation instructions. Robert realized then that Wunder had not installed the siding according to the instructions.

The Mills also learned in 1996, according to Robert, that a class action lawsuit had been filed against Forestex alleging their siding was defective. Robert told Wunder about the suit sometime in the winter of 1996, and asked him "to contact Forestex and find out what can be done about this." But still another year passed by without any repairs.

On December 15, 1997, the Mills wrote to Wunder saying they intended to file a complaint against him with the Contractors State License Board if he did not repair or replace the siding within 10 days. Wunder phoned Robert about a week later in response to the letter. Although Robert had known for a year that Wunder installed the siding incorrectly, he said of their conversation: "[I was] still not really after Mike because the material itself is faulty. [¶] There was a problem with the material, and I told Mike at that point that it was my hope[] that he would assist us and would have assisted us in resolving this issue. If we have to file a lawsuit against Forestex, then we would do that. And I wanted him to be with us whenever we do that. [¶] And strangely I noticed during this conversation that he was rather apprehensive in his responses—pretty guarded. . . ." So *this* was the conversation cited by the Mills in their opposition to Wunder's summary judgment motion, and discussed above, that they assert finally convinced them Wunder was not going to repair or replace the siding. The Mills filed a

Contractors State License Board complaint against Wunder on December 31, 1997.

Lori Mills testified she talked to Wunder perhaps 15 or 20 times about the siding problem between 1992 and 1996, and his response generally was that "he would take care of it." Lori contacted Andy's in 1996 and learned Forestex had manufactured the siding. Then, she said, "I went and I called Mike, and I talked to Mike about it. And he didn't say anything about it. I mean, like he was going to help me or anything." So from that point on, Lori explained, "we started dealing with Forestex."

The Mills's deposition testimony raises two questions: whether and for how long they were justified in relying on Wunder's promises to repair the siding, and whether the promises induced them to put off filing suit against him until after the limitations period had run. "[F]our elements are essential to the application of the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*Green v. Travelers Indemnity Co.* (1986) 185 Cal.App.3d 544, 556 [230 Cal.Rptr. 13]; see also Evid. Code, § 623.)

Reliance by the party asserting the estoppel on the conduct of the party to be estopped must have been reasonable under the circumstances. "'To warrant reliance, a representation must be such as would induce a reasonable man to act upon it.'" (*Three Sixty Five Club v. Shostak* (1951) 104 Cal.App.2d 735, 739 [232 P.2d 546].)

 Here, the trial court concluded it would not have been reasonable for the Mills to rely on Wunder to repair the siding after 1994, "when he quit working and failed to return to the job." While we tend to agree, the Mills's testimony establishes in any event that they had ceased to rely on Wunder's promises by 1996, not in December of 1997 as they claim. In addition, they knew or at least had reason to believe in 1996 that Forestex had manufactured the siding, that the siding was defective, and that Wunder had installed it incorrectly. A year or more remained at that point within which the Mills could have filed a timely action against Wunder. "If there is still ample time to institute the action within the statutory period after the circumstances inducing delay have ceased to operate, the plaintiff who failed to do so cannot claim an estoppel." (*Lobrovich v. Georgison* (1956) 144 Cal.App.2d

567, 573-574 [301 P.2d 460]; *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 716 [269 Cal.Rptr. 605]; *DeRose v. Carswell* (1987) 196 Cal.App.3d 1011, 1026 [242 Cal.Rptr. 368].)

Perhaps more importantly, the Mills's testimony also belies their contention that Wunder induced them to put off filing suit against him until after the statute had run (in the summer of 1997). Robert testified it still was not his intention as late as December of 1997 to sue Wunder, but rather to get Wunder to support the Mills's claims against Forestex. The Mills plainly could not have been induced to refrain from doing something they had not contemplated doing.

Finally, the Mills maintain Wunder should be estopped to assert the statute of limitations because he failed until December of 1997 to disclose that they might have a warranty claim against Forestex, and failed to intervene on their behalf with Forestex. They assert: "The relationship between [them] and [Wunder] may well have risen to the level of a fiduciary one and did impose a duty on [Wunder] to disclose the material facts relating to the siding." They rely for this proposition on *Seelenfreund v. Terminix of Northern Cal., Inc.* (1978) 84 Cal.App.3d 133 [148 Cal.Rptr. 307] (*Seelenfreund*).)

*Seelenfreund* was an action brought by a property owner against a pest control firm for negligent breach of an oral contract. The complaint, filed in 1977, alleged a termite inspection conducted by the firm in 1974 failed to disclose a number of problems existing at the time. The firm demurred to the complaint on the ground the action was barred by the two-year statute of limitations in section 339, subdivision 1. The plaintiff invoked the discovery rule. However, the trial court sustained the demurrer without leave to amend. The issue on appeal then was whether the discovery rule should be applied to this type of action. The appellate court held it should.

In analyzing the issue, the court noted that the discovery rule has been applied by statute to some types of actions, and by the courts to other types. Most notable among this second group are situations involving a fiduciary relationship such as professional malpractice cases. "[P]rofessionals are under a [fiduciary] duty to disclose to the client all facts which materially affect the rights and interests of the client. Failure of a professional to inform a client of the professional's negligent activity is therefore a breach of duty and is frequently treated as a fraudulent concealment of the cause of action. [Citation.]" (*Seelenfreund, supra,* 84 Cal.App.3d at p. 137.)

The property owner argued the firm had acted as his agent such that a fiduciary relationship arose between them and justified application of the discovery rule. The court held there had been no agency because the firm had not represented the property owner in any dealings with third parties. (*Seelenfreund, supra,* 84 Cal.App.3d at p. 137 [citing the definition of an agent in Civ. Code, § 2295].) However, it also held the discovery rule need not necessarily be limited to cases where the contending parties had a fiduciary relationship. The court pointed out that the termite control business was regulated by the Business and Professions Code, which required among other things a detailed inspection report be completed and filed with the person requesting an inspection. The complaint in *Seelenfreund* alleged negligent acts that seemingly violated this statutory duty to report. Thus, the court concluded, the case involved similar considerations as had been applied recently by the Supreme Court in extending the discovery rule to attorney malpractice cases.

"In [the attorney malpractice case], the duty of 'full and fair disclosure' arose out of a fiduciary relationship. Here, a similar imperative of reporting arose by statutory mandate. We do not perceive that the origin of the duty should determine when the statute of limitations should run for negligent breach of that duty.

" 'The *principal purpose* of the rule permitting postponed accrual of certain causes of action is to protect aggrieved parties who, with justification, are ignorant of their right to sue.' . . . [Citations.] [¶] Surely in the case at bench, appellant, in light of the specialized knowledge required, could, with justification, be ignorant of his right to sue at the time the termite inspection was negligently made and reported . . . ." (*Seelenfreund, supra,* 84 Cal.App.3d at pp. 138-139.)

The Mills seem to be arguing here either that Wunder was their agent and so had a fiduciary duty to assist them to prosecute a warranty claim against Forestex, or he had a statutory duty to do so. They have offered absolutely no legal or factual support for either argument, and we reject them both. (*Seelenfreund, supra,* 84 Cal.App.3d at p. 137 [agent is one who represents another in dealings with third person]; *McCauley v. Dennis, supra,* 220 Cal.App.2d at p. 636 [no fiduciary relationship between a building contractor and a person who engages his services simply on the basis of the engagement, nor on the basis of the contract].)

We conclude the Mills have failed to demonstrate that a triable issue of fact exists as to whether Wunder should be estopped to assert the statute of limitations.

## DISPOSITION

The judgments are affirmed. Defendants are awarded their costs on appeal.

Vartabedian, Acting P. J., and Cornell, J., concurred.