Filed 12/6/22  Bee Sweet Citrus v. Style-Line Construction CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| BEE SWEET CITRUS, INC., | F081905 |
| Plaintiff; | |
| STYLE-LINE CONSTRUCTION, INC., | (Super. Ct. No. 13CECG02757) |
| Cross-complainant and Appellant, | |
| v. | **OPINION** |
| KINGSPAN INSULATED PANELS, INC., | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Donald S. Black and Tyler D. Tharpe, Judges.

Heath & Yuen, APC and Stephen B. Heath for Cross-complainant and Appellant.

Futterman Dupree Dodd Croley Maier LLP, Daniel A. Croley and Katherine O'Neal; Preti Flaherty Beliveau & Pachios PLLP and Peter G. Callaghan for Cross-defendant and Respondent.

-ooOoo-

## INTRODUCTION

This case involves construction defect claims in connection with cross-complainant and appellant Style-Line Construction, Inc.'s (Style-Line) construction of a cold storage facility for plaintiff Bee Sweet Citrus, Inc. (Bee Sweet) using roof panels manufactured by cross-defendant and respondent Kingspan Insulated Panels, Inc. (Kingspan).

Style-Line appeals from two judgments: (1) an April 28, 2017 judgment of dismissal entered in favor of Kingspan and against Bee Sweet on Bee Sweet's third amended complaint after the trial court granted Kingspan's motion for summary judgment (2017 summary judgment); and (2) an August 4, 2020 judgment of dismissal entered in favor of Kingspan and against Style-Line on Style-Line's first amended cross-complaint after the court granted Kingspan's motion for judgment on the pleadings (2020 judgment on pleadings).

We affirm the 2017 summary judgment and affirm, in part, and reverse, in part, the 2020 judgment on pleadings.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Factual Background

On December 24, 2009, Style-Line issued a bid proposal to construct a cold storage facility and 28-foot wide, 42-foot long, and 20-foot high canopy (consisting of two bays) for Bee Sweet in the City of Fowler, California. Bee Sweet accepted the bid proposal on December 28, 2009. Bee Sweet agreed to the use of "five (5) inch thick R-41 insulated panels" for the roof of the facility.

Kingspan, the supplier of the roof panels, shipped the panels to the construction site at "the end of April 2010." Style-Line completed the installation of the roof panels before June 30, 2010.

During the "winter of 2010/2011 the roof of the cold storage building began to leak during rain storms." At the time, Style-Line was still on site and was performing

other projects for Bee Sweet. Bee Sweet was aware of the defective condition of the roof of the project before December 31, 2010 and "immediately notified the Style-Line representatives on site of the leaks." Style-Line undertook multiple attempts to repair the roof but was unsuccessful. The roof continued to leak whenever it rained.

Style-Line contends its President and Chief Executive Officer, Francisco J. Rodriguez (CEO), notified Kingspan of the problems with the roof panels but could not state when he notified Kingspan "other than it was after the 'problems' were discovered by [Bee Sweet]."

On April 10, 2013, Kingspan had one of its field representatives inspect the roof leaks. On April 15, 2013, Kingspan issued a report of its field representative's findings and made recommendations to remedy the leaks and any related complaints. However, by the time the report was issued, Style-Line had already performed repairs to the cold storage roof.

## II. Procedural Background

### A. The Original Complaint and Cross-Complaint Did Not Name Kingspan as a Party.

On September 4, 2013, Bee Sweet filed a complaint against Style-Line for breach of contract and general negligence in connection with Style-Line's installation of roof panels on the cold storage facility. Bee Sweet alleged Style-Line improperly installed the roof panels, leaving gaps between them; and the improper installation of the roof panels resulted in leaks in the roof, the build-up of condensation between the roof panels, and an inability to efficiently control the temperature of the cold storage facility.

On November 4, 2013, Style-Line answered the complaint and filed a cross-complaint against Bee Sweet for breach of the cold storage construction contract and other contracts, alleging Style-Line fully performed its contractual obligations and that Bee Sweet breached the contracts by failing to make full payment.

3.

Kingspan was not named as a defendant in Bee Sweet's original complaint or as a cross-defendant in Style-Line's original cross-complaint.

### B. Kingspan Was First Added as a Defendant in 2014, and as a Cross-defendant in 2015.

On January 6, 2014, Bee Sweet filed a first amended complaint and added Kingspan, the manufacturer of the roof panels, as a defendant. This was the first time Kingspan was named as a party to the action. As to Kingspan, Bee Sweet alleged a single negligence cause of action for alleged breach of duties to "provide materials free of defects" and to "train and supervise the installers and installation [of roof panels] by Style-Line."

On May 4, 2015, Kingspan moved for summary judgment or, alternatively, summary adjudication, of Bee Sweet's first amended complaint and each of the claims therein.

On June 25, 2015, Style-Line moved for leave to file an amended cross-complaint to add Kingspan as a defendant under several new causes of action.

On July 14, 2015, while Kingspan's earlier summary judgment/adjudication motion on Bee Sweet's first amended complaint was still pending, Bee Sweet applied ex parte for an order shortening time for a motion for leave to file a second amended complaint.

On July 21, 2015, the trial court issued a tentative ruling covering all pending motions and subsequently adopted its ruling as the order of the court on July 22, 2015. The trial court treated Kingspan's motion for summary judgment/adjudication as a motion for judgment on the pleadings, and granted the motion. In ruling in Kingspan's favor, the court noted Bee Sweet failed to allege facts demonstrating "that a duty existed, i.e. there is no allegation that Kingspan offered, contracted or undertook to train the installers [i.e., Style-Line]." The trial court further ruled that "because [Bee Sweet] has not alleged damages to person or property, it cannot recover economic damages in the

4.

form of increased electricity costs in a negligence cause of action." The court granted Bee Sweet's motion for leave to file a second amended complaint and Style-Line's motion to file a first amended cross-complaint.

On July 28, 2015, Style-Line filed its first amended cross-complaint. Style-Line realleged its contract causes of action against Bee Sweet, and alleged causes of action for equitable indemnity, contribution, and declaratory relief against Kingspan. Style-Line alleged it was entitled to "equitable indemnity [against Kingspan] including under the tort of another doctrine codified at [Code of Civil Procedure] section 1021.6."[1] It sought indemnification for its costs in defending against Bee Sweet's claims, and in prosecuting its amended cross-complaint; and "contribution from all persons who are obligated to reimburse, and to compensate Style-Line." Style-Line also sought a judicial declaration as to its alleged rights of defense, indemnity and contribution from Kingspan.

### C. Bee Sweet Filed a Second Amended Complaint Adding Warranty Claims Against Kingspan.

On August 3, 2015, Bee Sweet filed its second amended complaint. Among other things, Bee Sweet added a cause of action against Kingspan for breach of the implied warranty of fitness for a particular purpose, and added various allegations against Kingspan including, without limitation, that Kingspan breached a duty to Bee Sweet by recommending repairs that made the condition of the cold storage roof worse.

### D. Bee Sweet Filed the Governing Third Amended Complaint.

On May 3, 2016, Bee Sweet filed its third amended (and governing) complaint. In it, Bee Sweet reasserted a cause of action for general negligence against Style-Line and Kingspan. Bee Sweet alleged that Style-Line and Kingspan "held themselves out to the

---

[1]     Style-Line referenced "Civil Code section 1021.6" in its first amended cross-complaint. That reference appears to be in error. We presume the intended reference was to *Code of Civil Procedure* section 1021.6 which codifies the tort of another doctrine in cases involving implied indemnity.

5.

public as experts in the manufacture and construction of cold storage materials and cold storage facilities"; and that "[d]efendants owed [Bee Sweet] a duty to manufacture, design and provide materials free of defects, … to design and construct" the cold storage facility "as contracted and advertised," and to "train installation personnel in the installation and repair of insulated cold storage panels." Bee Sweet alleged, "[d]efendants each agreed that any defective work or materials or workmanship would be corrected promptly at no cost to [Bee Sweet]."

Bee Sweet further alleged Kingspan breached its duty to Bee Sweet by (1) failing to "adequately train and supervise" Style-Line in the installation and repair of Kingspan roof panels; (2) by supplying defective roof panels; (3) "by supplying shop drawings that were defectively designed"; (4) "by directing Style-Line to improperly install the insulated roof panels"; and (5) by "recommending specific repairs … [that] made the defective condition of the insulated roof panels even worse." Bee Sweet contends it "did not learn of the defective roof panels or recommended repairs until after May 27, 2015" when it received related discovery responses from Style-Line. Similarly, Bee Sweet contended it did not learn Kingspan had "prepared shop drawings for the layout and installation" of materials supplied by Kingspan until February 2016. Bee Sweet alleged Kingspan failed to inform it of numerous details during discovery including, without limitation, defects Style-Line had identified, the results of Kingspan's own inspection of the roof, and the existence of the shop drawings. It alleged Kingspan failed to produce the shop drawings in response to discovery until 2016.

Bee Sweet also included a cause of action for breach of express warranty against Kingspan, alleging Kingspan "expressly warranted by contract that it would replace all faulty materials and workmanship for a period of one year following purchase of its insulated roof panels, and failed to do so when requested by Style-Line." Bee Sweet alleged it was a "beneficiary of that warranty and relied on it in approving Kingspan as the supplier for its cold storage building."

6.

Finally, Bee Sweet added a cause of action against Kingspan for breach of the implied warranty of fitness for a particular purpose. Specifically, Bee Sweet alleged that Kingspan knew the roof panels were to be used to construct a cold storage building, and knew Bee Sweet was relying on Style-Line's and Kingspan's "skill, judgment and reputation in the construction and insulated panel industries"; that Bee Sweet justifiably did so rely; and that the roof panels were "not suitable for the particular purpose as an insulated roof."

### E.     In 2017, the Trial Court Granted Kingspan's Motion for Summary Judgment Against Bee Sweet.

On November 14, 2016, Kingspan moved for summary judgment or, alternatively, summary adjudication of claims and issues of duty in connection with Bee Sweet's third amended complaint. In its motion, Kingspan contended (1) any remedy against it was limited to replacement of roof panels or refund of the purchase price for defective panels; (2) Bee Sweet's cause of action for general negligence was barred by the statute of limitations; (3) Kingspan owed no duty to Bee Sweet sufficient to support its claim of general negligence; (4) Bee Sweet had no evidence Kingspan breached any duty of care in recommending how to repair the roof; (5) Bee Sweet had no evidence Kingspan's repair recommendations were the proximate cause of Bee Sweet's damages; (6) Bee Sweet's third cause of action for breach of express warranty was barred by the limitation period in the contract between Style-Line and Kingspan; and (7) Bee Sweet's fifth cause of action for breach of implied warranty was barred by the statute of limitations.

Both Bee Sweet and Style-Line opposed Kingspan's motion for summary judgment/adjudication.

On February 9, 2017, the trial court granted Kingspan's motion for summary judgment. The court declined to consider Kingspan's contention that any remedy against Kingspan was limited to replacement of the panels or refund of the panels' purchase

7.

price, ruling the issue did not present an issue of duty and would not otherwise result in the disposal of the cause of action.

As to Bee Sweet's general negligence cause of action, the trial court determined Kingspan established it owed or breached no duty to Bee Sweet to repair roof panels, that Bee Sweet and Style-Line both conceded there was no contractual duty in that regard, and that there were no promises made outside the written contract. The court rejected Bee Sweet's contention that Kingspan voluntarily assumed a duty to train and supervise Style-Line employees on how to undertake Kingspan's repair recommendations. The court further determined the statute of limitations bars the remaining general negligence claims asserted by Bee Sweet. It further rejected Bee Sweet's contentions that the delayed discovery rule postponed the commencement of the limitations period, and that the limitations period should be equitably tolled due to Kingspan's alleged concealment of facts during discovery relevant to its alleged liability.

As for Bee Sweet's express warranty claims against Kingspan, the trial court determined the warranty was limited in duration to one year and no warranty claim had been made within that time period. The court also rejected Bee Sweet's contention that Kingspan was on earlier notice of its warranty claims against Kingspan, finding that Style-Line "accept[ed] the panels as shipped and install[ed] them in an altered sequence" rather than making a warranty claim. Because Bee Sweet was asserting rights as a beneficiary of the Kingspan/Style-Line contract, the court concluded Bee Sweet must take the contract under the terms and conditions agreed to between Kingspan and Style-Line.

As to Bee Sweet's claims for breach of the implied warranty of fitness for a particular purpose, the trial court found the Kingspan/Style-Line contract disclaimed the warranty, and Bee Sweet lacked the necessary "vertical privity" to bring the claim.

On April 28, 2017, the trial court entered a judgment of dismissal in favor of Kingspan and against Bee Sweet (i.e., the 2017 summary judgment).

8.

### F. Style-Line Prematurely Appealed the 2017 Summary Judgment.

On June 12, 2017, Style-Line appealed the 2017 summary judgment.[2] On January 3, 2020, this court dismissed the appeal on Kingspan's motion, concluding the 2017 summary judgment was not a final appealable judgment due to the continued pendency of Style-Line's cross-complaint against Kingspan.

### G. In 2020, the Trial Court Granted Kingspan's Motion for Judgment on the Pleadings Against Style-Line.

On April 27, 2017, Kingspan moved for judgment on the pleadings with respect to Style-Line's first amended cross-complaint. The trial court ruled the action was stayed due to Style-Line's then pending appeal of the 2017 summary judgment. On January 8, 2020, following dismissal of Style-Line's premature appeal of the 2017 summary judgment, Kingspan renewed its motion for judgment on the pleadings as to Style-Line's first amended complaint.

On July 2, 2020, the trial court granted Kingspan's motion. In its order, the court stated, "Kingspan contends that because there is no claim by Bee Sweet against it [due to entry of the 2017 summary judgment], Kingspan has no liability for indemnity or contribution as a joint tortfeasor with Style-Line."

In granting the motion, the trial court noted this court's statement in its order dismissing Style-Line's earlier appeal that "the mere grant of summary judgment in favor of Kingspan on Bee Sweet's complaint would not, by itself, necessarily result in Style-Line losing all right to seek equitable indemnity against Kingspan under the [first amended] cross-complaint as a matter of law. The 'no liability, no indemnity' rule would not apply to the extent that any of Bee Sweet's negligence theories against Kingspan were adjudicated by the trial court solely on statute of limitation grounds. [Citations.]" In its order granting the motion, the trial court stated the 2017 summary judgment was

---

[2] *Style-Line Construction, Inc. v. Kingspan Insulated Panels, Inc.*, case No. F075770.

9.

not premised solely on statute of limitation grounds as to Bee Sweet's claims against Kingspan and found "the motion for summary judgment would have been granted even if the statute of limitations had not expired." The court ruled, "[j]udgment on the pleadings [was] still warranted on the basis that Style-Line has no right to indemnity in the first place, because Kingspan cannot be held jointly liable in tort to Bee Sweet."

The trial court also noted Style-Line's claim that "equitable indemnity can be based on strict and negligent products liability" under the theory that " 'a defendant/indemnitee may in an action for indemnity seek apportionment of the loss on any theory that was available to the plaintiff upon which the plaintiff would have been successful' " but also noted that neither Bee Sweet nor Style-Line ever asserted a claim for strict liability.

The trial court then turned to the question of whether Style-Line should be permitted "to amend to allege a theory of strict or negligent product liability." It found that "strict liability, like all tort liability, applies only if the allegedly defective product caused injury to persons or damage to property *other* than the allegedly defective product itself." The court determined economic loss without physical injury would not support a negligence or strict liability cause of action. It further found Kingspan would be prejudiced if Style-Line were permitted to amend because Style-Line has known of the roof leaks since 2010, the action has been pending since 2013, and the parties have completed voluminous discovery which would have to be repeated.

The trial court ruled Style-Line's contribution cause of action failed as a matter of law because "Style-Line d[id] not, and cannot, allege that a money judgment ha[d] been entered and paid by Style-Line." Finally, the court ruled that Style-Line's declaratory relief cause of action was not viable because it was derivative of Style-Line's other claims against Kingspan which had no viability.

On August 4, 2020, the trial court entered the 2020 judgment on pleadings in favor of Kingspan.

10.

Notice of entry of the 2020 judgment on pleadings was served on August 26, 2020.

On October 13, 2020, Style-Line timely appealed both the 2017 summary judgment and the 2020 judgment on pleadings.

Additional facts will be discussed below as necessary to address Style-Line's claims of error.

## DISCUSSION

**I.    Style-Line's Challenge to the 2017 Summary Judgment**

*A.    Standard of Review for the 2017 Summary Judgment*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The trial court is required to grant the motion " 'if all the papers submitted show' that 'there is no triable issue as to any material fact' ([Code Civ. Proc.,] § 437c, subd. (c)) … and that the 'moving party is entitled to a judgment as a matter of law.' " (*Ibid.*)

"In making its determination, 'the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, [but] it must nevertheless determine what any evidence or inference could show or imply to a reasonable trier of fact.' [Citation.] The evidence must be viewed in the light most favorable to the nonmoving party." (*Central Laborers' Pension Fund v. McAfee, Inc.* (2017) 17 Cal.App.5th 292, 313, italics omitted.)

"On appeal from a summary judgment, we 'examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' " (*Central Laborers' Pension Fund v. McAfee, Inc.*, *supra*, 17 Cal.App.5th at p. 313.) "We exercise our independent judgment as to the legal effect of the undisputed facts [citation] and must

11.

affirm on any ground supported by the record." (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140.)

### B. Style-Line's Contentions in Appealing the 2017 Summary Judgment

Style-Line does not challenge the trial court's rulings with respect to its summary adjudication of Bee Sweet's causes of action for breach of express warranty and breach of the implied warranty of fitness for a particular purpose. Style-Line's appeal of the 2017 summary judgment is directed solely to Bee Sweet's cause of action for general negligence.

Style-Line contends the trial court erred in granting the 2017 summary judgment by: (1) applying a two-year limitation period to Bee Sweet's negligence claims against Kingspan; (2) finding accrual of Bee Sweet's claims began in 2010; (3) finding equitable tolling did not extend the limitation periods applicable to Bee Sweet's claims; (4) finding Kingspan was not equitably estopped from asserting a statute of limitations defense; and (5) holding Kingspan owed no duty to Bee Sweet with regard to roof repairs due to an absence of privity of contract.

### C. The Trial Court Did Not Err in Determining Bee Sweet's Negligence Cause of Action (as it Related to Kingspan Supplying Materials and Providing Installation Instructions) Was Barred by the Limitations Period.

Style-Line contends Bee Sweet's negligence claims are subject to a three-year statute of limitations for " 'injury to real property' or 'personal property' " under Code of Civil Procedure section 338, subdivisions (b) and (c). Style-Line notes that Bee Sweet alleged damages consisting of damage to "stored fruit" and the "roof itself." Style-Line contends this satisfies Code of Civil Procedure section 338 and that the court erred by applying a two-year limitation period.

In response, Kingspan notes that neither Style-Line nor Bee Sweet argued that a three-year limitation period applied to Bee Sweet's negligence claims; that the argument

has been forfeited; and that, in any event, even under a three-year limitation period, the claim is time barred. We agree with Kingspan.

### 1. Style-Line Forfeited Its Argument that a Different Statute of Limitations Should Apply to Bee Sweet's Negligence Cause of Action.

"Failure to raise specific challenges in the trial court forfeits the claim on appeal. ' " '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' Thus, 'we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]' " [Citation.] "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, *each party* has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack…." [Citation.] ' " (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564, italics added (*Premier Medical*).)

Kingspan is correct that neither Style-Line nor Bee Sweet argued that a three-year limitation period applied to Bee Sweet's negligence claims. Reviewing the parties' briefs in support and opposition to Kingspan's motion for summary judgment, we note that Kingspan expressly contended that the two-year limitation period under Code of Civil Procedure section 339, applied to the claims. The opposition briefs filed by Style-Line and Bee Sweet failed to challenge this assertion. Rather, like Kingspan, they analyzed Bee Sweet's negligence claims under the two-year limitation period. In that regard, Bee Sweet argued the limitation period was tolled or, alternatively, Kingspan was estopped from asserting the defense. Similarly, Style-Line argued the limitation period was "equitably tolled" for the period of time it was making efforts to repair the roof leaks.

13.

Neither Bee Sweet nor Style-Line ever challenged application of the two-year limitation period asserted by Kingspan.

By failing to raise a challenge in the trial court to Kingspan's assertion that a two-year limitation period applied under Code of Civil Procedure section 339, Style-Line has forfeited the claim on appeal. (*Premier Medical*, *supra*, 163 Cal.App.4th at p. 564.) In any event, as discussed further below, all of Bee Sweet's causes of action against Kingspan (with the exception of those based on the theory of alleged negligence in providing repair instructions in or about 2013) would also be untimely under an assumed three-year limitation period.

### 2. The Trial Court Did Not Err in Finding a Two-Year Limitation Period Applied.

Style-Line relies on *Gilbert Financial Corp. v. Steelform Contracting Co.* (1978) 82 Cal.App.3d 65 (*Gilbert*) for its contention that a three-year limitation applies to Bee Sweet's negligence claims against Kingspan.

In *Gilbert*, a bank contracted with a contractor for the construction of a bank records storage building. (*Gilbert*, *supra*, 82 Cal.App.3d at p. 67.) The contractor, in turn, subcontracted with the defendant to "furnish materials and perform the construction of the roof" and other building components. (*Ibid*.) Soon after completion, the roof began to leak "causing damage to the contents of the building and to the building itself." (*Ibid*.) Over the next three years and five months, the contractor attempted to repair the leak but was unsuccessful. (*Ibid*.) The bank sued the defendant, alleging causes of action for negligence and breach of implied warranty. (*Id*. at p. 68.) The defendant moved for judgment on the pleadings, contending the defects were not latent and that the negligence cause of action was barred by the three-year limitations period under Code of Civil Procedure section 338. (*Gilbert*, at p. 68.) The trial court agreed. (*Ibid*.)

On appeal, the *Gilbert* court reversed. (*Gilbert*, *supra*, 82 Cal.App.3d at p. 71.) However, it did so on grounds that the allegations were sufficient to allege that the

14.

defendant had permitted the contractor to act as its "agent to bind [the defendant] to correct their defective work"; that the contractor had, through its efforts to repair the leak, induced the bank not to sue earlier; and that the limitations period was tolled as a result. (*Id.* at p. 69.) None of the parties in *Gilbert* challenged the propriety of applying the three-year limitations period, and the court did not actually consider whether Code of Civil Procedure section 338 applied. " '[A]n opinion is not authority for a proposition not therein considered.' " (*Dobbins v. San Diego County Civil Service Com.* (1999) 75 Cal.App.4th 125, 129.)

Our review of the governing complaint reveals that "damage to stored fruit" was alleged only in connection with Bee Sweet's breach of contract cause of action to which Kingspan was not a named defendant. The allegation was not incorporated into any of Bee Sweet's other causes of action. "[T]he pleadings define the issues to be considered on a motion for summary judgment." (*Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1383.) Accordingly, the trial court was permitted to disregard that allegation in considering the applicable limitation period—especially in light of the fact that none of the parties challenged application of the two-year limitation period. As for the alleged damage to the roof, the evidence does not appear to support a claim of damages to anything other than the roof panels themselves.

We conclude the trial court did not err in applying a two-year limitation to Bee Sweet's negligence claims against Kingspan.

### 3. Bee Sweet's Negligence Cause of Action (as it Related to Kingspan Supplying Materials and Providing Installation Instructions) Accrued by the End of 2010 and Would Be Barred Even Under a Three-Year Limitation Period.

Style-Line argues the trial court "erred by finding accrual began in 2010." Kingspan argues Bee Sweet's negligence claims, to the extent they relate to the supplying

of materials and installation instructions, accrued "no later than late 2010." We agree with Kingspan.

"[T]he common law rule, that an action accrues on the date of injury [citation], applies only as modified by the 'discovery rule.' " (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.) It is well established "that ignorance of the legal significance of known facts or the identity of the defendant would not delay the running of the statute— only ignorance of one or more 'critical facts' could have that effect." (*Id.* at p. 1110.) In *Jolly v. Eli Lilly & Co.*, our high court stated, "[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her…. [T]he limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person *on inquiry* ….' " ' [Citation.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Id*. at pp. 1110–1111, fn. omitted.)

Here, it is undisputed that Kingspan supplied roof panels for the project before the end of April 2010.[3] Moreover, in its separate statement in opposition to Kingspan's motion for summary judgment/adjudication, Style-Line indicated the following facts were undisputed for purposes of the motion: (1) "In or about February or March 2010, Kingspan provided Style-Line with a proposed layout plan … to confirm how many

---

**3** Bee Sweet did not dispute this fact. Although Style-Line indicated in its separate statement in opposition to Kingspan's motion that this fact was disputed, Style-Line did not meaningfully dispute the fact. Instead, Style-Line merely contended that Kingspan also "designed and specified the number, lengths and installation of the panels" and "instructed Style-Line on the installation."

panels were needed … and generally how the panels were to be installed"; (2) "In about March 2010, Kingspan provided Style-Line with … shop drawings … showing how the panels should be installed"; (3) "The drawings … were approved by Style-Line without modification or comment"; (4) "In the spring of 2010, while installing the roof panels on the north side of the Project's roof, Style-Line determined that is was not able to perform Kingspan's standard left to right installation sequence, which it had used on the south side, due to the irregular shape of the roof"; (5) Style-Line contacted Kingspan in the spring of 2010 to seek assistance in resolving installation questions for the north side of the roof; (6) Kingspan advised Style-Line it could install the roof panels from "right to left instead of the left to right method used on the south side"; (7) Style-Line accepted the recommendations of Kingspan in that regard; (8) Style-Line believed the "changes to the layout sequence" would "not compromise the integrity of the roof"; (9) "Style-Line did not ask Kingspan to replace the panels for the north side of the roof"; (10) "Style-Line completed installing the roof panels before June 30, 2010";[4] (11) Bee Sweet "discovered

---

[4]     In support of its argument on appeal, Style-Line contends the evidence shows its CEO and project foreman were present during the "installation of the … panels at the Bee Sweet facility in or about April 2012." A declaration from Style-Line's CEO states that the "[CEO] was present for and saw along, with [his] foreman …, the installation of the Kingspan panels at the Bee Sweet facility in or about April, 2012." However, Style-Line admitted it "completed installing the roof panels before June 30, 2010."

Kingspan states Style-Line is conflating two separate projects for Bee Sweet—the cold storage facility, and a " 'de-greening' room" that also used panels manufactured by Kingspan. Kingspan contends Style-Line is trying to "create the impression that relevant dates for statute-of-limitations purposes are in 2012, when in fact they are in 2010 as the trial court found." It is undisputed that Style-Line successfully remediated the leaks in the degreening room roof following Kingspan's advice.

Notably, the declaration from Style-Line's CEO does not indicate the installation he witnessed in 2012 was for the cold storage facility. Moreover, Style-Line's project manager, Nathan Montalvo, noted that the roof panels were being installed in the "spring of 2010"; that Kingspan and Style-Line discussed the solution of installing the panels "backwards"—i.e., rotated 180 degrees—versus having Kingspan replace the panels; that Kingspan represented it would take 14 weeks to manufacture and supply replacement

the defective condition of the roof … following the first rain after construction was complete in June, 2010"; (12) Bee Sweet "was aware of the defective condition of the roof … before December 31, 2010"; (13) Bee Sweet "did not file a claim of any kind against Kingspan until January 2014"; and (14) Bee Sweet "did not file a claim against Kingspan for negligent manufacture of the panels until July 2015," and "did not file a claim against Kingspan for negligent design … until May 3, 2016." [5]

The undisputed facts demonstrate Bee Sweet was on notice of the roof's leaky condition by the fall or winter of 2010. Bee Sweet's employee, Martin Guzman, testified that Style-Line came out to Bee Sweet's facility "around twenty" times during 2010 to repair the roof problems.

---

panels, but that "[d]ue to the very tight timeline available to complete the construction of the cold storage building," the parties decided "to reverse the installation process and install the panels in a right to left, clockwise orientation…."; Mr. Montalvo then relates that "[i]n late 2010 or early 2011, [he] was contacted by Bee Sweet regarding leaks in the roof of the cold storage building." Mr. Montalvo further confirmed Style-Line constructed the degreening building for Bee Sweet in 2012.

The only fair inference from Style-Line's CEO's statement that he was present for the installation of the panels "at the Bee Sweet Facility in or about April, 2012" is that the installation was in connection with a separate project. Any other interpretation would be inconsistent with Style-Line's admission that installation of the cold storage roof panels was completed before June 30, 2010.

[5] In its separate statement, Bee Sweet took the position these facts were in dispute. However, it did not meaningfully dispute them. Rather, Bee Sweet clarified "[t]he *cause* of the leak, the defective panels and layout[,] were not known in 2010," (italics added) and that the cause of the leak was not discovered until Kingspan provided discovery responses in April and May of 2015. Bee Sweet also provided facts demonstrating (a) wall panels supplied by Kingspan were "too short to reach the interior roof of the … building"; (b) Kingspan "promptly manufactured" replacement [wall] panels which were delivered to the job site "as a warranty item" free of charge; (c) the roof panels "were delivered next"; (d) Kingspan sent an employee to "instruct Style-Line's employees how to properly remove the protective coating from each of the panels"; (e) Style-Line met with Kingspan representatives to discuss the change in the sequencing of the panel installation (i.e., right to left versus left to right); (f) Style-Line made multiple, unsuccessful repair attempts; and (g) Kingspan sent a representative out to inspect the project who subsequently issued a report of his findings.

18.

Bee Sweet also alleged in its third amended complaint that Kingspan "expressly warranted" its materials "for a period of one year following purchase of its insulated roof panels" and that Bee Sweet "*relied on [the warranty] in approving Kingspan as the supplier for its cold storage building.*" (Italics added.) Allegations in Bee Sweet's complaint constitute judicial admissions and " 'are conclusive concessions of the truth of a matter and have the effect of removing it from the issues.' " (*Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1324.) " ' "While inconsistent *theories* of recovery are permitted [citation], a pleader cannot blow hot and cold as to the facts positively stated." ' " (*Ibid*.)

Thus, the evidence establishes that, at a minimum, Bee Sweet knew there was a leakage problem with the roof in 2010; it had notified Style-Line of the problem; Style-Line came out approximately 20 times to attempt to remedy the problem in 2010 alone; and Style-Line was unsuccessful in its attempts. Bee Sweet's allegations in its third amended complaint demonstrate it was aware Kingspan would be the supplier of the roof panels prior to construction of the roof (i.e., it relied on Kingspan's warranty in approving Kingspan as supplier). Moreover, Bee Sweet's employee, Martin Guzman, averred he knew the installation was being performed by Style-Line in accordance with the information Kingspan provided Style-Line on "how to install the panels."

Kingspan likens this case with that in *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625 (*Mills*). In *Mills*, the plaintiffs hired a contractor to build them a house in 1990, and hired him again the following year to build a garage. (*Id.* at p. 633.) The siding for the house and garage were manufactured by Forestex Company (Forestex). (*Ibid*.) Within a year of both buildings being completed, the siding started to warp and buckle. (*Ibid*.) The contractor's efforts to remedy the problem were unsuccessful. (*Ibid*.) By 1993, paint on the siding began to peel and the nails securing the siding began to back out. (*Ibid*.) The plaintiffs finally contacted Forestex in 1996 to come out to inspect. (*Ibid*.) Forestex determined the siding was not installed properly by the

19.

contractor. (*Ibid*.) In 2000, the *Mills* plaintiffs filed suit against Forestex and the contractor. (*Ibid*.)

The *Mills* plaintiffs alleged, among other things, causes of action for violation of the Song-Beverly Consumer Warranty Act,[6] breach of express warranty, and construction defect sounding in strict liability. (*Mills*, *supra*, 108 Cal.App.4th at pp. 634–635.) Forestex demurred on several grounds including that the claims were barred by applicable statutes of limitation. (*Id*. at p. 636.) The plaintiffs opposed and argued "they had been in discussions with Forestex in the 14 months between their discovery of the siding problem in May of 1996 and their final rejection of the siding in July of 1997" and that the "limitations period therefore was equitably tolled during this period, and Forestex should be estopped" from asserting the limitations defense because Forestex "had induced them thereby to postpone filing their complaint." (*Ibid*.) The court allowed the plaintiffs to amend to state those facts. (*Ibid.*)

Forestex then moved for summary judgment or, alternatively, summary adjudication, on the ground the claims were barred by the applicable statute of limitations. (*Mills*, *supra*, 108 Cal.App.4th 625, 638.) The court noted that " '[r]epair suggests discovery of a latent defect and commencement' " of the limitation period. (*Id*. at p. 649.) The court concluded "as a matter of law that the siding problem on the [plaintiff's] house was sufficiently appreciable no later than the summer of 1993 to put them on notice to pursue their remedies, and consequently to start the … statutes of limitation to run." (*Id*. at p. 650.) The *Mills* court stated the rule that "a cause of action accrues when the plaintiff discovers, *or has the opportunity to discover*, the necessary facts underlying his or her claim." (*Ibid.*)

We conclude the problems with the leaky roof were "sufficiently appreciable" to Bee Sweet by late 2010. By that time, Bee Sweet knew that the roof was leaking, and

---

**6**      Civil Code section 1790 et seq.

that Style-Line's multiple efforts to repair the roof had been unsuccessful. As mentioned, Bee Sweet also knew that Kingspan had provided the panels and information on how to install the panels.

To be timely under a two-year statute of limitations, Bee Sweet would have had to file any claims attributable to the original manufacture and installation of the panels by no later than the end of 2012. Moreover, even if we were to assume a three-year statute of limitations, Bee Sweet would have had to file any such claims no later than the end of 2013. Bee Sweet did not sue Kingspan until January 8, 2014. Under either circumstance, Bee Sweet's negligence claims related to Kingspan's supplying materials and installation instructions were untimely.

### 4. Bee Sweet's Claims Against Kingspan Were Not Equitably Tolled.

Style-Line contends the trial court erred by finding the statute of limitations was not tolled as a result of Kingspan providing it with repair instructions. We disagree.

"Equitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370 (*Lantzy*).) Courts have applied the doctrine "in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." (*Ibid*.) "[T]he effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." (*Id*. at pp. 370–371.)

"[T]he party invoking equitable tolling bears the burden of proving its applicability." (*Long v. Forty Niners Football Co., LLC* (2019) 33 Cal.App.5th 550, 555,

21.

citing *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 912.) Because Kingspan presented evidence demonstrating the limitation period on Bee Sweet's cause of action for negligent supply of materials and installation instructions had run, it was Style-Line's burden to produce evidence demonstrating the limitation period had been tolled. (See *Mills*, *supra*, 108 Cal.App.4th at pp. 650–651.)

In support of its tolling argument, Style-Line relies on *Addison v. State of California* (1978) 21 Cal.3d 313, 318–319 (*Addison*).

In *Addison*, the "[p]laintiffs originally filed a tort action against [the] defendants, the State of California and the County of Santa Clara, in federal court, alleging violations of both state and federal law." (*Addison*, *supra*, 21 Cal.3d at p. 315.) The action was timely under the six-month statute of limitations for claims against public entities. (*Id.* at pp. 315–316; Gov. Code, § 945.6.) However, after the expiration of the six-month limitation period, the defendants successfully moved to dismiss the suit based on a lack of federal jurisdiction. (*Addison*, *supra*, at pp. 315–316.) The federal court dismissed the suit without prejudice to a possible state court action based on the same claims. (*Id.* at p. 316.) When the plaintiffs filed their state court action, the defendants demurred arguing the filing was untimely because it was not brought within the six-month limitation period. (*Ibid.*) The trial court sustained the demurrer and the plaintiffs appealed. (*Ibid.*)

Our high court "appl[ied] the well established doctrine of 'equitable tolling' " in holding the six-month limitation period was suspended during the time the plaintiffs were pursuing their claims in federal court. (*Addison*, *supra*, 21 Cal.3d at p. 316.) In doing so, the court addressed the purpose of statutes of limitation and the policy of applying equitable tolling under certain circumstances. It wrote:

> "It is fundamental that the primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available. '[T]he right to be free of stale claims in time comes to prevail

22.

over the right to prosecute them.' [Citations.] The statutes, accordingly, serve a distinct public purpose, preventing the assertion of demands which through the unexcused lapse of time, have been rendered difficult or impossible to defend. However, courts have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." (*Addison*, *supra*, 21 Cal.3d at p. 317.)

The *Addison* court cited to *Elkins v. Derby* (1974) 12 Cal.3d 410 (*Elkins*) and *Bollinger v. National Fire Ins. Co.* (1944) 25 Cal.2d 399 (*Bollinger*) as examples of where the equitable tolling doctrine has been employed. (*Addison*, *supra*, 21 Cal.3d at pp. 318–319.) The court noted that, in *Elkins*, it held "the statute of limitations on a personal injury action is tolled while [the] plaintiff asserts a workers' compensation remedy against [the] defendant." (*Addison*, *supra*, 21 Cal.3d at p. 318.) It further noted that, in *Bollinger*, the "plaintiff had filed in a timely manner a previous action against an insurer but the action had been improperly dismissed as premature under the terms of the insurance policy" and that the "[p]laintiff promptly filed a new action, but by then the period of limitations had run." (*Addison*, *supra*, 21 Cal.3d at p. 318.) Our high court "allowed the action, based upon the broad policy … permitting the plaintiff to file a new action within one year if a judgment in his favor is reversed on appeal." (*Ibid.*)

The *Addison* court wrote: "As demonstrated by *Bollinger* and *Elkins*, application of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." (*Addison*, *supra*, 21 Cal.3d at p. 319.) Style-Line includes the above quotation in its opening brief (without including the clause referencing *Bollinger* and *Elkins*) to argue that equitable tolling should apply in the case before us.

*Addison* provides that the equitable doctrine may be employed when, among other required elements, the plaintiff reasonably and in good faith pursues other legal remedies. (*Addison*, *supra*, 21 Cal.3d at pp. 317–319.) Here, there is no evidence that Bee Sweet (or Style-Line, for that matter) pursued other legal remedies against Kingspan. Similarly,

23.

there is no evidence that Kingspan was timely notified of the problems. Bee Sweet was aware of the roof leaks in 2010. Bee Sweet indicated it "immediately notified" Style-Line of the leaks. Yet, the evidence, viewed in the light most favorable to Bee Sweet and Style-Line, indicates Kingspan was not notified of these problems until some unspecified date in 2012.

Style-Line further argues broadly that "in a construction defect case, a statute of limitations is tolled when a defendant represents it would cure the defects," citing *Gilbert*, *supra*, 82 Cal.App.3d at pp. 68–69.

As mentioned previously, *Gilbert* involved the construction of a records storage facility for the owner/bank by a contractor using roofing and other materials supplied by the defendant manufacturer. (*Gilbert*, *supra*, 82 Cal.App.3d at p. 67.) The roof leaked and over the course of more than three years, the contractor attempted to correct the problem. (*Ibid*.) The owner/bank then sued the defendant manufacturer and others. (*Id*. at p. 68.) The trial court granted defendant manufacturer's motion for judgment on the pleadings as to the owner/bank's negligence cause of action on the ground the action was barred by the statute of limitations. (*Ibid*.) The appellate court determined this was error. (*Id*. at p. 69.)

Specifically, the *Gilbert* court found that the pleadings were adequate to allege equitable tolling of the statute of limitations as to the defendant manufacturer. The court, quoting Witkin, noted that equitable tolling will occur " 'where the defendant makes representations to the effect that he will *perform his contractual obligation*, and the plaintiff, in reliance thereon, forbears to sue in time.' " (*Gilbert*, *supra*, 82 Cal.App.3d at pp. 68–69.) The court then wrote:

> "[The owner/bank] relies on article 9 in the contract with [the contractor] to state a cause of action against [the defendant manufacturer] under this rule of law. Article 9 is somewhat ambiguous. It could be interpreted to mean that [the contractor] has assumed the responsibility to correct its subcontractors' defective work on its own, or that [the contractor] had an

24.

arrangement with its subcontractors that permitted it to act as the subcontractors' agent to bind them to correct their defective work. In any event, it is sufficiently ambiguous to allow evidence on its meaning or application. The burden of proof on [the owner/bank] may be substantial but it is entitled to offer it. The court erred in dismissing this cause of action." (*Gilbert*, *supra*, 82 Cal.App.3d at p. 69, fn. omitted.)

Thus, in *Gilbert* the action was allowed to proceed against the defendant manufacturer on the theory that equitable tolling applied because the defendant manufacturer had appointed the contractor to act as its agent and to bind the defendant manufacturer to correct defective work.

Here, there is no evidence that *Kingspan* authorized Style-Line to bind it in connection with repairs to Bee Sweet's roof. Similarly, there is no evidence that Kingspan made any representations to Bee Sweet that it would repair the roof, or that Kingspan was under any contractual duty to make such repairs.

In rejecting Style-Line's equitable tolling argument, the trial court relied on *Montoya v. Regents of University of Cal.* (S.D. Cal. 2010) 2010 WL 2731767, at page *5 and *Huynh v. Chase Manhattan Bank* (9th Cir. 2006) 465 F.3d 992, 1004 for the proposition that " 'the plaintiff bears the burden of establishing (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way and prevented timely filing.' " Even under this formulation of the doctrine, Style-Line's argument must be rejected. There is no evidence that Bee Sweet (or Style-Line, for that matter) diligently pursued their rights against Kingspan or that extraordinary circumstances prevented them from timely filing their claims against Kingspan.

We conclude Style-Line did not produce evidence sufficient to create a triable issue as to whether the limitations period was subject to equitable tolling.

### 5.     Kingspan Was Not Equitably Estopped From Asserting a Statute of Limitations Defense.

Style-Line contends Kingspan was equitably estopped from asserting a statute of limitations defense. We disagree.

"One aspect of equitable estoppel is codified in Evidence Code section 623, which provides that '[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' [Citation.] But ' "[a]n estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] To create an equitable estoppel, 'it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.' … ' … Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.' " ' " (*Lantzy*, *supra*, 31 Cal.4th at p. 384.)

"Accordingly, (1) if one potentially liable for a construction defect represents, while the limitations period is still running, that all actionable damage has been or will be repaired, thus making it unnecessary to sue, (2) the plaintiff reasonably relies on this representation to refrain from bringing a timely action, (3) the representation proves false after the limitations period has expired, and (4) the plaintiff proceeds diligently once the truth is discovered [citation], the defendant may be equitably estopped to assert the statute of limitations as a defense to the action." (*Lantzy*, *supra*, 31 Cal.4th at p. 384.)

Style-Line argues the first element is met because "[Kingspan] conceded it provided negligent instructions, which ultimately failed." Style-Line's contention is not borne out by the record. Style-Line cites to the trial court's statement that, " '[i]t is undisputed that the panels were sold in April 2010, installation was completed by June, and problems arose (leaks, accumulation of condensation) before the end of the year….' " and its statement that " 'Kingspan concedes that the allegedly negligent repair instructions given in April 2013 would be within the limitations period if there was a duty in that regard.' "

The trial court's adopted tentative ruling is not evidence submitted in support of, or opposition to, Kingspan's motion for summary judgment/adjudication. Moreover, even if the statements constituted such evidence, they do not stand for the proposition that Kingspan represented all actionable damage has been, or will be, repaired. The statements do not reference any representations made by Kingspan to Bee Sweet—let alone any statements from which Bee Sweet might reasonably conclude it was unnecessary to sue Kingspan. Likewise, because there is no evidence of any such representations by Kingspan to Bee Sweet, there is no evidence Bee Sweet justifiably relied on any such representations.

We conclude Kingspan was not equitably estopped from asserting a statute of limitations defense.

### D. The Trial Court Did Not Err in Determining Kingspan Owed Bee Sweet No Duty With Regard to Alleged Repair Recommendations and Training.

Style-Line further argues the trial court erred in finding Kingspan owed no duty to Bee Sweet with regard to alleged repair recommendations and training. We disagree.

The trial court found "Kingspan has established that it owed or breached no duty with regard to the repairs of the roof panels. Contractually, there was no such obligation or duty. [Bee Sweet] concedes this point. There is nothing in the Kingspan/Style-Line contract that obligates Kingspan to train or to supervise Style-Line's employees.… There is also no evidence that Kingspan made any promise outside of this contract.… Style-Line admits in discovery responses that Kingspan did not owe such a [contractual] duty."

The trial court further found Bee Sweet was relying on the "voluntary undertaking or Good Samaritan doctrine, contending that Kingspan assumed a duty to Style-Line and to [Bee Sweet] when it voluntarily undertook to provide recommendations for repairs … referencing [undisputed material facts] 14–20." We agree Bee Sweet is relying on the doctrine. In that regard, the Restatement Second Torts, section 324A provides:

27.

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Rest.2d Torts, § 324A.)

Our courts adhere to this principle of potential liability. (See *Paz v. State of California* (2000) 22 Cal.4th 550, 553.)

In moving for summary judgment/adjudication, Kingspan asserted that "[Bee Sweet's] contention that Kingspan had a duty to train Style-Line personnel regarding repairs to the roof of the [cold storage building] is based on: (a) the April 15, 2013 report prepared by Craig Storch and (b) 'repair recommendations' Bee Sweet claims an unidentified employee of Kingspan provided for a different building in 2012." Both Bee Sweet and Style-Line indicated that this alleged fact was disputed.

Kingspan also asserted as undisputed facts that (1) the April 2013 report "did not obligate Kingspan to train Style-Line personnel regarding how to repair the roof"; (2) "[t]he 2010 contract between Style-Line and Kingspan did not obligate Kingspan to train Style-Line" with regard to the repairs; (3) that Style-Line did not request such training; and (4) that no written or oral promises were made with regard to repairs. Kingspan asserted similar undisputed facts with respect to any alleged duty to supervise repairs to the roof and any alleged duty to provide repair recommendations.

On appeal, Style-Line contends contractual privity is unnecessary to establish a duty, and that " 'courts have found in a variety of circumstances that builders, contractors, and architects owe a duty of care to third parties,' " quoting *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 573 (*Beacon*). Style-Line is correct. In *Beacon*, our high court provided an extended discussion of the "declining significance of privity" in various areas of law including,

28.

without limitation, construction law. (*Beacon*, *supra*, 59 Cal.4th at p. 574.) However, for reasons discussed below, the trial court's determination must be upheld.

A review of the underlying evidence cited by Bee Sweet and Style-Line reveals that Style-Line relied on *prior* advice given by a Kingspan employee in connection with a separate order and separate project (i.e., repairs to the degreening room roof) in order to make repairs to the cold storage roof. The repairs to the degreening room were successful in solving the condensation problems in the degreening room. Because they were successful, Style-Line's CEO admitted they had no reason to believe the solution would be any different with respect to repairs to the cold storage building, and "had no reason to contact Kingspan" with regard to repairs to the cold storage building. According to Style-Line, it had already completed repairs to the cold storage roof (based on Kingspan's prior successful recommendations with regard to the repairs to the degreening room roof) by the time Kingspan issued its April 2013 report and recommendations. Style-Line did not meaningfully dispute that it "did not make any additional repairs to the roof based on the any [*sic*] recommendations contained in the [April 2013] Storch Report." Notably, in attempting repairs to the roof of the cold storage building, Style-Line used a different product (i.e., different pressurized foam) to seal gaps upon the recommendation of a third party.

The evidence establishes that Style-Line did not rely on any repair instructions given with respect to the cold storage facility. Rather, it utilized the same method that it successfully used in correcting condensation problems associated with the degreening room using a different product.

We conclude Kingspan did not have, assume, or breach a duty with regard to repair of the cold storage roof.

29.

## II.  Style-Line's Challenge to the 2020 Judgment on Pleadings

### A.  *Standard of Review for the 2020 Judgment on Pleadings*

" ' "The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer:  We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein....  We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory." ' " (*Tarin v. Lind* (2020) 47 Cal.App.5th 395, 403–404.)

### B.  *Style-Line's Contentions in Appealing the 2020 Judgment on Pleadings*

In appealing the 2020 judgment on pleadings, Style-Line confines its argument to challenging the trial court's dismissal of its claim for equitable indemnity and its decision to deny Style-Line leave to amend to allege a theory of strict product liability against Kingspan.  We liberally construe this argument to also include a challenge to the court's dismissal of the declaratory relief cause of action (to the extent it is derivative of Style-Line's equitable indemnity claim).

Style-Line does not present any arguments or authority to challenge the trial court's dismissal of its cause of action for contribution.

### C.  *Because There Was No Duty With Regard to Alleged Repair Recommendations and Training, the Trial Court Did Not Err in Granting Judgment on the Pleadings With Respect to Those Claims.*

"Equitable indemnity, which 'requires no contractual relationship,' ' "is premised on a joint legal obligation to another for damages" '; it is 'subject to allocation of fault principles and comparative equitable apportionment of loss.' [Citation.] ' "The elements of a cause of action for [equitable] indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is ... equitably responsible." ' " (*C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 700.)

"[A]n action for equitable indemnity is premised upon a joint legal obligation to another for damages. [Citation.] As against the indemnitee, the indemnitor may invoke any substantive defense to liability that is available against the injured party. (*Ibid*.) Thus, concerning matters of substantive law, an action for equitable indemnity is 'wholly derivative and subject to whatever immunities or other limitations on liability [that] would otherwise be available. [Fn. omitted.]' [Citation.] '[I]f the evidence establishes that a defendant is not a concurrent tortfeasor responsible in any way for the plaintiff's injuries, another defendant may not pursue a claim for indemnity against that defendant.' [Citation.] This principle is often expressed in the shorthand phrase '… there can be no indemnity without liability.' " (*Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1787, italics omitted.)

Because we have concluded that Kingspan owed no duty to Bee Sweet in connection with the attempted repairs to the cold storage facility, there could be no joint liability between Style-Line and Kingspan with regard to such repairs. The trial court did not err in granting judgment as to that claim.

### D.      *The Trial Court Did Not Abuse Its Discretion in Denying Style-Line Leave to Amend.*

Style-Line contends the trial court should have allowed it to amend its cross-complaint to allege Kingspan's liability under a strict products liability theory.

We review the court's determination to deny leave to amend for abuse of discretion. (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945.) " 'An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice.' " (*Safeco Ins. Co. of America v. Superior Court* (2009) 173 Cal.App.4th 814, 832.)

Style-Line argues that even assuming Kingspan owed Bee Sweet no duty, the court below still erred in granting judgment on the pleadings because Bee Sweet could

31.

have asserted a claim for strict product liability against Kingspan and Style Line "may in an action for indemnity seek apportionment of the loss on any theory that was available to the plaintiff upon which the plaintiff would have been successful," citing *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 430 (*GEM Developers*).

In *GEM Developers*, the court noted that the strict products liability theory "was adopted because sales warranty theory, developed to meet the needs of commercial transactions and requiring a showing of privity, was inadequate to protect consumers. [Citation.] 'The doctrine … was developed primarily to protect individual consumers, users, and, to some extent, bystanders who are in no position to protect themselves from defective products' rather than to protect commercial entities." (*GEM Developers*, *supra*, 213 Cal.App.3d at p. 425.) The court noted that caselaw "hold[s] that when a lawsuit arises in a commercial setting between two businesses and involves only a business loss, the parties should use normal commercial remedies (e.g., the Uniform Commercial Code) rather than a theory developed for the benefit of consumers (i.e., strict products liability)." (*Id.* at p. 426.) However, the court also determined that where the underlying loss was suffered by a consumer, and a commercial entity was held liable for the consumer's loss, the commercial entity could seek indemnity from other potentially responsible commercial entities if the injured consumer could have prevailed against them on a strict products liability theory. (*Id.* at p. 429.)

Here, the situation is different from that involved in *GEM Developers*. The injury suffered by Bee Sweet was a business loss—not a consumer loss. "[T]he doctrine of products liability does not apply as between parties who: (1) deal in a commercial setting; (2) from positions of relatively equal economic strength; (3) bargain the specifications of the product; and (4) negotiate concerning the risk of loss from defects in it." (*Kaiser Steel Corp. v. Westinghouse Elec. Corp.* (1976) 55 Cal.App.3d 737, 748, superseded by statute on another ground as stated in *Barnett v. American-Cal Medical*

32.

*Services* (1984) 156 Cal.App.3d 260.) The transaction at issue was between commercial parties. Neither Style-Line nor Bee Sweet contended that any of the parties were of disparate economic strength. Moreover, the parties bargained for the specifications of the roof panels in their respective contracts and negotiated the risk of loss in agreeing to, and relying on, the warranties supplied by Kingspan.

The trial court did not err in determining the strict products liability theory was unavailable to Bee Sweet.

In addition, the trial court determined Kingspan would be prejudiced by the assertion of a new theory of liability. We agree. Style-Line and Bee Sweet knew of the roof leaks since 2010. Bee Sweet filed suit in 2013 and Style-Line cross-complained in 2013. Neither party asserted any claims against Kingspan at that time. Bee Sweet first named Kingspan as a defendant in 2014. Style-Line first named Kingspan as a cross-defendant in 2015. None of the parties asserted a strict products liability theory against Kingspan in their pleadings. Noting that the parties had engaged in extensive discovery and that the discovery would have to be repeated to address such a claim, the trial court denied leave to amend.

The trial court's ruling did not exceed the bounds of reason. We conclude the court did not abuse its discretion in denying Kingspan leave to amend.

### E. The Trial Court Erred In Granting Judgment on the Pleadings in Connection With Style-Line's Causes of Action for Indemnity and Declaratory Relief With Regard to Kingspan Supplying Materials and Installation Instructions.

We next consider whether the trial court erred in granting judgment on the pleadings on Style-Line's cause of action for equitable indemnity and declaratory relief in connection with Kingspan's supplying materials and installation instructions in 2010. We conclude the trial court did err in this regard.

An "indemnity action, unlike the plaintiff's claim, does not accrue for statute of limitations purposes when the original accident occurs, but instead accrues at the time that the tort defendant pays a judgment or settlement as to which he is entitled to indemnity. [¶] Moreover, the controlling precedents also teach that a tort defendant does not lose his right to seek equitable indemnity from another tortfeasor simply because the original plaintiff's action against the additional defendant may be barred by the statute of limitations. The defendant's equitable indemnity action is independent of the plaintiff's action and a defendant is entitled to pursue his own indemnity action so long as the statute of limitations on [the equitable indemnity action] has not expired." (*People ex rel. Dept. of Transportation v. Superior Court* (1980) 26 Cal.3d 744, 748.)

In its respondent's brief, Kingspan notes, "a claim for equitable indemnity 'requires a determination of fault on the part of the alleged indemnitor' " and contends, "here the trial court correctly held that Kingspan owed no duty (and therefore had no liability for negligence) to Bee Sweet…. Without it, Style-Line's equitable indemnity claim fails as a matter of law."

Kingspan's characterization of the trial court's ruling on summary judgment is broader than the ruling itself. In granting summary judgment in favor of Kingspan and against Bee Sweet, the trial court determined that Bee Sweet's claims with regard to matters involving the initial supplying and installation of the cold storage roof were barred by the statute of limitations. It did not find that Kingspan did not owe Bee Sweet a duty with regard to such matters. The court's ruling reads, in relevant part: "the court finds that Kingspan *owed no duty with regard to repairs*, or if it did, Kingspan did not breach the duty of care in that regard. [¶] The remainder of the second cause of action lacks merit because the statute of limitations has expired." (Italics added.) Thus, to the extent Style-Line's claims of indemnity were related to the "remainder of the second cause of action" [i.e., Kingspan's alleged negligence in supplying materials and installation instructions in 2010], the trial court's summary adjudication of those claims

was based *solely* on the ground the limitations period had expired and does not preclude Style-Line from seeking equitable indemnity on those claims from Kingspan.

In its general negligence cause of action, Bee Sweet alleged "[d]efendants owed [Bee Sweet] a duty to manufacture, design and provide materials free of defects …." It further alleged Kingspan breached a duty of care by "supplying insulated roof panels which were defectively manufactured, by supplying shop drawings that were defectively designed, [and] by directing Style-Line to improperly install the insulated roof panels …." With regard to these claims arising out of the initial construction of the cold storage roof, Kingspan's motion for summary judgment/adjudication was directed only at whether such claims were barred by the statute of limitations, and whether Kingspan had a duty to *supervise or train* Style-Line on installation—not whether there was a duty with regard to the manufacture of the product or Kingspan's recommendations regarding the reverse sequence installation procedure employed by Style-Line. Kingspan did not meet its burden on summary judgment/adjudication of demonstrating there was no duty with regard to these latter two claims—whether by voluntary assumption or otherwise.

As a result, the trial court's grant of summary judgment against Bee Sweet did not preclude Style-Line from seeking declaratory relief and indemnity from Kingspan in connection with the supplying of materials and the reverse sequence installation procedure it recommended. Those claims were not resolved by either motion. In so concluding, however, we express no opinion on whether Kingspan owed Style-Line a duty in that regard, on the merits of Style-Line's indemnity and related declaratory relief claims, or on whether Style-Line may be limited in its recourse against Kingspan should Style-Line prevail on the merits.

III.    Summary

The trial court did not err in granting summary judgment in favor of Kingspan and against Bee Sweet. In appealing the summary judgment, Style-Line only challenged the summary adjudication of Bee Sweet's negligence cause of action. As for that challenge,

we conclude the trial court correctly determined Kingspan owed no duty to Bee Sweet or Style-Line in connection with repairs to the cold storage roof, and correctly determined that "[t]he remainder of the second cause of action lacks merit because the statute of limitations has expired on any claim for negligence."

With regard to the judgment on pleadings, the trial court did not abuse its discretion in denying Style-Line leave to amend to premise its causes of action for indemnity, contribution, and declaratory relief based on a strict products liability theory. Moreover, the court did not err in granting judgment on the pleadings to the extent Style-Line's causes of action were premised on Kingspan's alleged negligence in connection with repairs to the cold storage roof.

However, we conclude the court did err in granting judgment on the pleadings with respect to Style-Line's indemnity and declaratory relief claims as they related to allegations that Kingspan supplied defective materials, and provided negligent instructions for installing the roof panels.

## DISPOSITION

The 2017 summary judgment in favor of Kingspan and against Bee Sweet is affirmed in its entirety.

The 2020 judgment on pleadings in favor of Kingspan and against Style-Line is reversed to the extent the trial court ruled Style-Line was barred from seeking indemnity (and related declaratory relief) in connection with Kingspan supplying roof panels for the cold storage building, and supplying instructions for the initial construction of the roof in or about 2010. In all other respects, the 2020 judgment on pleadings is affirmed.

In the interests of justice, each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).) The case is remanded to the trial court for further proceedings consistent with this opinion.

LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


SMITH, J.